## 38578. CONYERS v. THE STATE.

MARSHALL, Justice.

Augustus Garvin Conyers, Jr., appeals from his conviction of murder and his sentence of life imprisonment.

1. Enumeration of error 1 challenges the sufficiency of the evidence to support the conviction.

Evidence was adduced to the following effect. The appellant, Lula Parks, and victim Clifton Jones all shared an apartment containing two bedrooms, a living room and a kitchen. Jones was a boarder in the apartment. Parks' status was controverted, as is discussed in Division 3, post.

Shortly after 8:00 p.m. on February 12, 1981, police were called to the apartment, where they found the victim lying dead on the floor in one of the bedrooms. A large knife was found underneath his body. The cause of death was determined to be internal bleeding caused by multiple (11) stab wounds. The appellant was found sitting in a chair in the other bedroom. He had a small cut on the palm of his right hand and blood stains on his pants which matched the blood type of both the appellant and the victim. The appellant and the victim had been known to have "a few words," and both had been drinking that day.

Lula Parks' statement to the police and her testimony at trial authorized the jury to find that the victim came into the apartment while she was in the kitchen preparing supper, the only other person

in the apartment being the appellant. According to her statement to the police, she remained in the kitchen approximately 15 minutes before taking some food back to the appellant's bedroom, at which time she observed the victim's body in the other bedroom. Apparently, at this point the appellant told her to call for help. She told the police that she had seen no one run out of the house. The only exit from the bedrooms was through the kitchen.

The appellant also made a statement to the investigating officers, giving several versions of the stabbing. After being taken to the police station, he was advised of his Miranda rights, and refused to sign the written waiver, but later made verbal statements and signed a written statement. At trial, he denied that the signature was his.

According to Officer Harris, the appellant initially stated that Jones had been stabbed by a homosexual boyfriend named Robert, who at one time had boarded with the appellant. He then gave a slightly different version, stating that he became involved in an altercation with Jones and Robert; that the knife had fallen to the floor; and that he had seen the victim stabbed after the knife fell. He later stated that he had been lying in bed when an unidentified black male ran out of Jones' room and past him. Finally, he stated that he had been lying in bed when someone attempted to stab him. According to this last version, he had taken the knife from the perpetrator, who then proceeded to run from the building.

At trial, the appellant testified that he was lying in bed when he heard victim Jones call his name; that, as he responded to the call, an unidentified man charged out of Jones' room, cut the appellant's hand, and knocked him unconscious for a few minutes; that, when he regained consciousness, he found Jones lying on the floor; that he then called for Lula Parks and went back to his room to put on his shoes; that Parks was not in the kitchen at that time; that when Parks finally arrived, he told her to call for help; that he had known Jones for approximately 15 years, and he did not kill him. In an apparent attempt to explain how the blood got on his pants, he testified that on two occasions he picked Jones up off the floor and placed him on the bed, but that he had fallen off the bed both times.

A polygraph examiner testified, pursuant to stipulation, that in his opinion the appellant gave deceptive answers during a polygraph examination when he stated that he had not stabbed Jones, that he did not know who had, and that he was not angry with Jones.

Lula Parks testified at trial that she was in the kitchen when Jones returned to the apartment; however, contrary to her earlier statements to the police, she further testified that she left the apartment for a short time to look for her cat, and that it was not until

she returned that she discovered Jones' body lying in the back bedroom. She denied that she had been in the kitchen when the stabbing occurred, or that she knew anything about it.

Viewing the above evidence in a light most favorable to the verdict, we find that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Enumeration of error 2 contends that the trial court erred in finding that the state had been entrapped by its own witness, Lula Parks, and in allowing the state to cross-examine her and introduce her out-of-court statements.

"Although ordinarily a party may not impeach its own witness, when he can show the court that he has been entrapped by the witness' prior contradictory statement, impeachment will be allowed. Code Ann. § 38-1801. Furthermore, a witness may be impeached by his own prior inconsistent statements. Code Ann. § 38-1803. *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975); *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244) (1975); *Gary v. State,* 156 Ga. App. 856 (275 SE2d 830) (1980)." *Foster v. State,* 248 Ga. 409, 410 (283 SE2d 873) (1981).

Witness Parks' statement to the police was to the effect that, after the arrival of the victim, she remained in the kitchen, cooking for approximately 15 minutes, before she walked to the back bedroom and discovered the appellant and the victim's body. Her testimony at trial, however, was that after the arrival of the victim, she left the apartment for a short while to look for her pet cat. This contradiction is important, because the evidence shows that she saw the victim alive in the apartment when there was no one else but the appellant there, and 15 minutes later she saw the victim dead. Her testimony, that she had left the apartment during that 15-minute interim, lent support to the appellant's defense that an unidentified man had stabbed the victim, cut the appellant, and fled from the apartment, as she would have seen such a man if she was in the kitchen, through which was the only exit from the bedrooms. Under the totality of the circumstances, there was no error in admitting the testimony of the prior inconsistent statements of Parks.

Moreover, since Ms. Parks took the stand, was subject to cross-examination, and was given an opportunity to explain or deny her prior statement, her statement was admissible as substantive evidence, and not limited to impeachment. *Ranger v. State,* 249 Ga. 315 (290 SE2d 63) (1982); *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982).

3. Enumeration of error 3 is the trial court's finding that witness Parks was not the common-law wife of the defendant, and thus

compellable as a witness.

The decision of the trial court as to the fact question of the existence vel non of a common-law marriage, should not be disturbed on appeal if there is any evidence to support its finding. *Holton v. State,* 243 Ga. 312 (1) (253 SE2d 736) (1979) and cits.; *Sheffield v. State,* 241 Ga. 245 (1) (244 SE2d 869) (1978). There was evidence that Lula Parks did not, as a matter of course, use Mr. Conyers' name, and, in fact, only signed her name "Mrs. Conyers" once or twice, for reasons she "didn't know"; that most people knew her as Lula Parks; that, although she had shared an apartment with the appellant for several years, she had no telephone at that address, received no mail at that address, and received all her mail — including her social security check — at her own home, addressed to her there as "Miss Parks"; that all of her identification, her social security records and her income tax records were in her maiden name; that she lived at her other address much of the time; that she got started staying at the appellant's house when she would go out and her children would go out and she couldn't get back in her home, so she would just stay with the appellant "until it just got to be a habit"; that, although she had stayed with the appellant for approximately seven years, and cooked meals for him, she had never seen the appellant's son, had no children by the appellant, did not know where he got his money, and got only enough money from him to buy food; that she testified that she was not legally married to the appellant; that the appellant testified that, although he had told people that she was his common-law wife, he also said that they were not legally married, and that he *intended* to marry her; that, when filling out his history sheet at the jail, in the space assigned to marital status the appellant wrote "divorced." The above evidence authorized the finding that a common-law marriage did not exist.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 26, 1982.

*Carl Greenberg,* for appellant.
*Lewis R. Slaton, District Attorney, Margaret V. Lines, Assistant District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.