### 66962. McDANIEL v. THE STATE.

McMURRAY, Presiding Judge.
Defendant was indicted and convicted of livestock theft. Defendant's motion for new trial was denied, and he appeals. *Held:*

1. Defendant contends the trial court committed reversible error while charging the jury in expressing its opinion that the defendant fled the scene of the crime. The suggested error occurred when the trial court stated to the jury "[n]ow, in this case *the Court contends* that this accused fled or left the scene of the county subsequent to the alleged crime." (Emphasis supplied.) Defendant argues that this emphasized language constitutes a violation of the provisions of former Code § 81-1104 (now OCGA § 17-8-55, effective November 1, 1982). "The question of whether [former] Code Ann. § 81-1104 [OCGA 17-8-55] has been violated is not reached unless an objection or motion for mistrial is made." *State v. Griffin,* 240 Ga. 470 (241 SE2d 230). Since there was no objection to the emphasized language at trial or request for mistrial defendant is estopped from raising the issue on appeal. *Bissell v. State,* 157 Ga. App. 711, 712 (2) (278 SE2d 415). Additionally, when the entire charge is considered as a whole, it is apparent that there was a mere "slip of the tongue" on the part of the trial court which was not misleading or confusing. See *Gober v. State,* 247 Ga. 652, 655 (3) (278 SE2d 386); *Lowe v. State,* 146 Ga. App. 529 (246 SE2d 517); *Jenkins v. State,* 121 Ga. App. 74, 75 (172 SE2d 844).

2. Defendant contends that the trial court erred in refusing to give his requested charge in the language of former Code Ann. § 26-906 (Ga. L. 1968, pp. 1249, 1274) (now OCGA § 16-3-26, effective November 1, 1982) in regard to coercion as a defense. Although defendant presented evidence that he had been kidnapped at gunpoint and forced to cash a check (the proceeds from the sale of the

stolen cattle), such events purportedly occurred subsequent to the events determinative of defendant's guilt or innocence of the crime with which he was charged. The trial court properly refused to give the requested charge in regard to coercion as it was not applicable to the facts of the case. *Stocks v. State,* 153 Ga. App. 72, 73 (2) (264 SE2d 552).

3. Defendant made a timely request for a copy of any scientific reports in the possession of the district attorney pursuant to the provisions of former Code Ann. § 27-1303 (Ga. L. 1980, p. 1388) (now OCGA § 17-7-211, effective November 1, 1982). By letter the district attorney responded that there "are no scientific reports or statements in the possession of the State . . ." There is no suggestion in the record as to the existence of any written scientific report relevant to the case sub judice.

At trial the state presented the testimony of a handwriting expert employed by the State Crime Laboratory. This witness gave testimony which identified defendant as the endorser of the check issued by a stockyard for the stolen cattle. Relying upon the reasoning set forth in *Tanner v. State,* 160 Ga. App. 266 (287 SE2d 268), and similar cases, defendant contends for the first time on appeal that because no written scientific report was delivered to defendant or his counsel 10 days prior to trial the testimony of this witness should not have been admitted into evidence.

We note that former Code Ann. § 27-1303, supra, "applies only to 'any *written* scientific report' (emphasis supplied) and does not serve to exclude testimony where no such report was in the possession of the state. See *Billings v. State,* 161 Ga. App. 500 [501-502] (3) (288 SE2d 622) . . . Although it might be argued that to permit the introduction of this evidence in this case will be precedent for the state deliberately to instruct witnesses not to prepare reports otherwise discoverable pursuant to OCGA § 17-7-211 (c) (Code Ann. § 27-1303), there is no evidence suggesting bad faith on the part of the prosecution in this case. See *Billings,* supra." *Olson v. State,* 166 Ga. App. 104 (4) (303 SE2d 309). There is no evidence in the case sub judice suggesting that the lack of a written scientific report reflects bad faith on the part of the prosecution. Former Code Ann. § 27-1303, supra, does not require creation of a written scientific report if none exists. *Ramsey v. State,* 165 Ga. App. 854, 856 (2) (303 SE2d 32).

As previously stated, defendant made no objection at trial to the admission into evidence of the testimony of the state's handwriting expert. As a court for the correction of errors of law we may not consider defendant's objection to the admission of this testimony raised for the first time on appeal. *Chester v. State,* 162 Ga. App. 10, 12 (4) (290 SE2d 117); *Brown v. State,* 161 Ga. App. 55, 57 (3) (289

SE2d 9).

4. State's exhibits numbers 8 and 9 were used for comparison purposes during the testimony of the state's handwriting expert. Defendant contends that these exhibits should not have been admitted into evidence because they were not submitted to defendant prior to trial pursuant to the provisions of former Code § 38-709 (now OCGA § 24-7-7, effective November 1, 1982). Defendant made no objection at trial to the admission into evidence of state's exhibits 8 and 9. Such an objection may not be raised for the first time on appeal. *Thomas v. State,* 59 Ga. 784, 787 (5).

5. Defendant's final enumeration of error addresses the sufficiency of the evidence. At trial the state presented evidence that: On the morning of September 18, 1980, the caretaker of a small cattle farm owned by McGregor observed that all of McGregor's cows were present. Later in the morning the caretaker had a conversation with the defendant regarding cutting hay on the McGregor farm. During this conversation the caretaker told defendant that she was on her way to Jonesboro to see McGregor. The caretaker left the McGregor farm about 11:00 a.m. after she had closed and locked the gate. When the caretaker returned about 3:30 p.m. she found that the gate which she had closed and locked was standing open. The caretaker's initial investigation revealed that some cows were visible in the pasture and she assumed that all the remainder of the cattle were in the wooded area of the pasture. Later that evening, with the assistance of another individual, the caretaker was informed of missing cows. She then discovered that nine cows were missing and that the lock on the gate had been cut. The owner of the cattle, McGregor, after being notified of these circumstances called the sheriff's department. The following day September 19, 1980, McGregor, along with the Pike County sheriff and his deputy traveled to a stockyard in LaGrange where McGregor was able to identify three of his nine missing cows among those located in the holding pens at this stockyard. Five more cows were recovered from the buyer who had purchased them at the stockyard. The ninth cow had been sent to a slaughter house and was never recovered. The records of the LaGrange stockyard show that the eight cows recovered by McGregor as belonging to him, as well as the ninth cow sent to a slaughter house and never recovered, were delivered at the stockyard on September 18, 1980, by defendant where they were sold at auction and a check issued for the proceeds of that sale. The endorsement on the check made payable to the defendant by the stockyard was stated in the opinion of the state's handwriting expert to be that of defendant. McGregor testified that he was able to identify the cows recovered as his own and this evidence was corroborated by the testimony of a neighbor who

sometimes worked on a casual basis for McGregor and was familiar with the cattle in question. The identity of one of the stolen cows was further corroborated by the testimony of a veterinarian who had performed surgery on the cow in question. An employee of the Pike County sheriff's office testified as to having driven by the McGregor farm approximately five or ten minutes before 12:00 noon on September 18, 1980, and having seen the defendant standing at the gate of the McGregor farm.

Although defendant presented conflicting evidence which primarily addresses itself to the identity of the cattle involved the determination of the issues thus formed were for the jury. We have carefully examined the record and transcript and conclude that under the evidence presented at trial a rational trier of fact could reasonably have found the defendant guilty beyond a reasonable doubt of the offense of livestock theft. See *Harris v. State,* 234 Ga. 871, 873 (218 SE2d 583); *Harris v. State,* 236 Ga. 766, 767 (225 SE2d 263); *Moore v. State,* 240 Ga. 807, 811 (II (1) ) (243 SE2d 1); *Conyers v. State,* 249 Ga. 438, 440 (1) (291 SE2d 709).

*Judgment affirmed. Shulman, C. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 23, 1983 —
REHEARING DENIED DECEMBER 8, 1983 —

*Alfred D. Fears, Floyd M. Buford,* for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Jr., J. David Fowler, Assistant District Attorneys,* for appellee.