76099. FLOYD v. THE STATE.
(372 SE2d 287)

BEASLEY, Judge.

Floyd appeals his conviction of 24 counts of theft by taking (OCGA § 16-8-2) and five counts of forgery (OCGA § 16-9-1), crimes committed while he was Clerk of the State Court of Glynn County.

1. The first question on appeal is whether the trial court erred in denying defendant's motion to dismiss the indictment. Appellant seeks not a new trial but rather an exoneration of the twenty-nine charges of which he was found guilty. In this connection, the sole ground urged below, and here, is that the district attorney's office engaged in prosecutorial misconduct by forcing defendant's attorney to turn over certain of his financial records during the investigation, in violation of his right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.

Thus, as presented by appellant, we must determine whether these constitutional provisions require dismissal of the indictment and in effect, judgment of acquittal, when the state obtained records in the manner and under the circumstances of this case. We are bound to consider only those rulings of the trial court enumerated as error by appellant. OCGA § 5-6-40; *Slaughter v. Linder,* 122 Ga. App. 144, 148 (2) (c) (176 SE2d 450) (1970); *Irvin v. Askew,* 241 Ga. 561, 566 (2) (246 SE2d 682) (1978). See *MacDonald v. MacDonald,* 156 Ga. App. 565 (1) (275 SE2d 142) (1980). We also are confined to only those grounds raised below in connection with the error enumerated. *Franklin v. State,* 184 Ga. App. 396 (1) (361 SE2d 700) (1987); *Brantley v. State,* 177 Ga. App. 13, 14 (1) (338 SE2d 694) (1985). The function of this court is to correct errors of law committed by the lower courts and raised properly here. *Fowler v. State,* 155 Ga. App. 76 (2) (270 SE2d 297) (1980).

Appellant does not here challenge the denial of his motion to suppress evidence, and for good reason. Suppression of the evidence gains nothing other than another trial on the same evidence, as the evidence in question was not tendered or referred to in the trial. Appellant apparently recognized, in not appealing the suppression rul-

ing, that even if the evidence should have been suppressed, he sustained no harm from the jury's consideration of it because it was not introduced. Harm as well as error must be shown to authorize reversal by an appellate court. *Anderson v. State*, 183 Ga. App. 313 (3) (358 SE2d 888) (1987). *Stewart v. State*, 180 Ga. App. 266, 267 (2) (349 SE2d 18) (1986), succinctly states the rule: "The burden is on the party claiming error not only to show error, but error which injured him, and unless the error resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, an appellate court will not reverse."

Although appellant urges that he was harmed by this evidence because it led to the testimony and documents concerning his personal expenditures through his Federal Credit Union and American Express accounts, that is not so. The receipts and credit account statements which Claire turned over were just partly analyzed by the state and, although tending to show appellant was spending more than he was drawing in compensation as clerk, they were not used at trial. The state had better evidence of his living beyond legitimate means through records received directly from these same creditors and others pursuant to court orders of September 1986, four months before the box was delivered to the detective. None of its contents were used in the trial or to gain evidence which was admitted at trial. "A constitutional error is harmless, if there is no 'reasonable possibility that the evidence complained of might have contributed to the conviction.' *Fahy v. Connecticut*, 375 U. S. 85, 86-87 (84 SC 229, 11 LE2d 171) (1963). The test is . . . whether the evidence complained of may have influenced the factfinder's deliberations, see *Harrington v. California*, 395 U. S. 250, 254 (89 SC 1726, 23 LE2d 284) (1969)." *Harryman v. Estelle*, 597 F2d 927, 929 (5th Cir. 1979). The application of this principle is illustrated in *Chambley v. State*, 177 Ga. App. 630 (1) (340 SE2d 635) (1986), and is appropriate here.

What appellant wanted by his motion to dismiss the indictment and claims he is entitled to is a bar to prosecution. He urges that he was denied due process because of what the assistant district attorney *wrote* in the letter, even if it did not have the *effect* on Claire Floyd of producing incriminatory evidence by illegal coercion or by evoking fear in her which constituted coercion, and even if it did not produce evidence used in trial. Thus he appears to urge that the court must sanction the State for its writing and delivering such a letter, requested by the addressee (who is not the defendant) and including a statement suggesting prosecution if the addressee does not comply.

The trial court conducted a hearing on the motion to dismiss, as well as on another motion, just prior to trial. At the hearing, defendant's estranged wife, two police detectives, and the district attorney testified. The court had an earlier hearing on a motion to suppress the

same evidence, which it denied after considering the testimony of the same two detectives plus another officer and Claire Floyd, as well as the letter from the assistant district attorney to Claire. Defendant does not contend that denial was error.

In ruling on the motion to dismiss, the court found as fact that there was no attorney-client relationship existing between Claire Floyd and defendant with respect to the items she turned over to the detective because they had no connection with the lawsuits in which she had been representing him. The court also found as fact that there was no prosecutorial misconduct in obtaining these documents. These findings are conclusive unless they are clearly erroneous, which they are not. See *Muff v. State*, 254 Ga. 45, 48 (2) (b) (326 SE2d 454) (1985), regarding findings at a suppression hearing. The principle is a general one, see, e.g., *Conyers v. State*, 249 Ga. 438, 441 (3) (291 SE2d 709) (1982), and would apply here as well.

Other than the statement itself in the letter that "Failure to [turn over the papers] may result in criminal prosecution for withholding evidence," there is no evidence of coercion. The letter from the assistant district attorney to Claire Floyd was prepared at the request of her attorney, who asked the assistant district attorney to give her a letter "directing" her to give the papers. Claire had filed an action for separate maintenance December 11 and, although she had been given complete authority over defendant's belongings and affairs by his letter to his daughter just after he left town in September, and she considered his things to have been abandoned by him, she was concerned because they were now adversaries. The sentence extracted in the quote above was added after the assistant consulted with the district attorney. When Claire picked it up at the courthouse, she did not even consult with her attorney again but instead, the next day, called the detective about where to deliver the records and then did so, obtaining a receipt she had prepared. She was concerned that she would be implicated in his wrongdoing, because she and defendant had some joint accounts and because she was the beneficiary of some of his cash and credit expenditures and because she knew there was a boxful of hundred dollar bills in the house.

Never did she intimate, in the motion to suppress hearing, or at the motion to dismiss hearing, or at trial, that she felt coerced or threatened in any way by the now-highlighted sentence. In fact, a review of her testimony, whether taken in its totality in these proceedings or only that portion which appears in the subject motion hearing, clearly shows that she did not wish to assist in the defense but cooperated from the beginning with the state. When the regular audit in August and September revealed the irregularities and appellant suddenly vanished without notice to her or anyone else after being confronted with some questions by the auditors, it is manifest that she

became anxious to distance herself from him.

Claire never asserted or suggested that her Fourth Amendment rights were violated, or that she felt threatened or coerced by the district attorney. There is no evidence the state even knew of these papers or sought them before she voluntarily met with the district attorney. There is no evidence of lack of voluntariness but instead that she was willing, if not anxious, for the state to have them. And she justified her exercise of authority and control over them by pointing to defendant's instructions in the letter he wrote to his daughter after he disappeared.

Nor did Claire ever say or imply that her action was prompted by prosecutorial coercion, or that she delivered the box of papers because she felt threatened by the prosecutor. It is the effect of the letter on *her* that counts, in considering voluntariness. The controlling factor is not the contents of the letter per se but the effect thereof on the addressee, because it is *her* action which defendant complains yielded incriminating evidence.

Thus a finding of fact by this court, that she was coerced, is not compelled by the evidence presented to the trial court. The latter viewed the letter in the context in which it was given as well as the broader context of Claire's relationship with defendant and the history of the circumstances as well as what was anticipated by her.

Nor is there fault with the trial court's finding that the papers Claire took to the detective were unrelated to the attorney-client relationship which had existed. This relationship is what appellant based his motion to dismiss on and bottoms his appeal on. That is the sole ground we are confined to considering. *Franklin*, supra; *Brantley*, supra; *Fowler*, supra.

It was undisputed that Claire had represented her husband in four legal matters: a suit for slander against a hospital concerning his paternity of a certain child born there, a suit to declare him not the father of that child, an injunction action against his brothers concerning some business venture, and a proceeding regarding his father's estate. By the time the papers were given to the detective on January 10, she had stopped acting as his attorney, even though she had not entered formal withdrawals, and the matters had either been turned over to someone else or were concluded. Thus the evidence at the motion hearing just before trial supports the trial court's ruling on this ground.

Consequently, despite defendant's protestations, this case does not involve illegally forced extraction of a client's papers from that client's attorney for the purpose of criminal prosecution. What the assistant district attorney wrote, when viewed in the light of the circumstances as to the operative effect of the sentence, or letter, unjustified though it may be, does not require acquittal in order to preserve

defendant's federal constitutional right to due process of law.

2. The trial court did not err in refusing to sever the indictments, as to forgery, false swearing and theft, since they were based upon the same conduct or constituted part of a single scheme or plan, in appellant's conduct as clerk of court, and the matter of severance lying within the sound discretion of the trial court. *Griffin v. State*, 180 Ga. App. 682 (350 SE2d 270) (1986).

3. The trial court's polling of the jury upon request was properly done. See *Green v. State*, 246 Ga. 598 (17) (272 SE2d 475) (1980).

*Judgment affirmed. Benham, J., concurs. Deen, P. J., concurs specially. McMurray, P. J., Carley and Pope, JJ., concur in the judgment only. Birdsong, C. J., Banke, P. J., and Sognier, J., dissent.*

DEEN, Presiding Judge, concurring specially.

While concurring fully in Divisions 2 and 3 of the majority opinion, I cannot concur with all that is said in Division 1.

Initially, it must be noted that Floyd appeals from the denial of his motion to dismiss the indictment, and not from any unsuccessful attempt to suppress evidence. This court's review should be narrowly limited to that issue, rather than branching off on to a suppression of evidence issue.

In this case, Floyd's motion to dismiss essentially had two factual predicates, i.e., (1) that the prosecutor had demanded materials from Floyd's attorney, and (2) that the demand was coercive. Review of the record, however, fails to bear out either fact. Floyd's wife had previously served as his attorney in some civil actions, but at the time of the prosecutor's request for the materials, not only was she no longer his attorney, she was well on her way to no longer being his wife. Concerning any contention that Floyd's wife was coerced into surrendering the materials, it appears from the record that Floyd's estranged wife actually was willing to cooperate with the prosecutor.

There was no "instinct with coercion" in this case. The trial court properly denied the motion to dismiss, and Floyd's conviction should be affirmed.

BIRDSONG, Chief Judge, dissenting.

A majority of this court today has condoned the use of, and in effect said that it is proper and right for the prosecution to simply write, a letter to a person (in this instance an attorney) and say: "*You are hereby directed immediately to turn over [certain] evidence to the District Attorney's office to be used in the prosecution of [a criminal case]. Failure to do so may result in criminal prosecution for withholding evidence. . . .*"

The majority treats cavalierly the statement quoted: "Failure to

do so may result in criminal prosecution for withholding evidence." Threats of criminal prosecution *are serious*!

The majority apparently sees nothing in the least harmful or unreasonable in approving such a threat. Can the police come to your door in the night and demand, under threat of arrest, that you give them whatever in your house they think might assist them in a criminal case? Can the state prosecutor hand-deliver a letter to you commanding you to turn over whatever he desires, or face prosecution, ergo imprisonment? Can any policeman stop you on the street or in your car and order you to hand over your purse or wallet or briefcase, or anything belonging to someone else which you control or possess? Wherein lies the difference?

Nothing now stands in the way of the State's full enjoyment of this succulent fruit, except, apparently, the imposition of a burden newly placed upon the criminal defendant to prove the particular evidence was actually introduced at trial. This burden is terrible, awful to contemplate in any trial, but in a complex trial with dozens and dozens of documents obtained from many sources, and all commingled and confused, the burden is near impossible. And so, this Golgothian obligation is not a hinderance to the State's gathering of evidence, for the mere imposition of this defendant's burden *gives license* to the State to demand anything by threat, so long as it is not actually introduced at trial, or is used in a way that cannot be traced.

It is disturbing that the decisions written by the United States Supreme Court, the federal and all state courts upholding the Fourth Amendment constitutional rule of law and warrant against oppressive, intrusive state actions, have been apparently overlooked.

The majority asserts the evidence turned over by "Claire" was "just partly" analyzed by the State and, although tending to show appellant was spending more than he was drawing in compensation as clerk, "they were not used at trial." The contextual truth, proven unequivocally by the record, is that the detective analyzed as much of the evidence as he pleased, wrote a report with conclusions, and gave the report to the DA; and then he gave the evidence to the DA, who reorganized it and rearranged it and admitted in court, in defense of *using and introducing* some arguably tainted evidence from defendant's mailbox, that the mailbox evidence had gotten mixed in with the evidence turned in by Mrs. Floyd "so that the officers cannot identify specifically what" came in the mailbox or was gotten from Mrs. Floyd. And he argued that the use of the so-called mailbox evidence obtained by state warrant in September 1986, was somehow justified or harmless because some of it had been returned to Mrs. Floyd, and *"in any event on January 10, 1987, they were subsequently turned back over to the police [by Mrs. Floyd] and they came back into the possession of the police in January anyway, at*

*least some of the items probably.* I think it is *very difficult to tell* because of the volume of mail that was coming in. The offices *cannot identify specifically* what it was."

Thus, the prosecutor himself *admits* he very well, even presumably, might be introducing some of the evidence that came from Mrs. Floyd.

The statement that none of the evidence was used at trial is simply not true. There is, of the dozens and dozens of documents in evidence, State's Exhibit 16.06, which is a series of American Express charge receipts labeled "cardmember's copy," and for which there is no warrant, as there was for another Amex account bearing another account number. The S16.06 receipts showed an expenditure of more than $2,500 for unspecified travel, on the account of Wayne Floyd, "Clerk of State Court." Assuredly these came from the possession of the "cardmember" (Floyd), and not from the offices of American Express, for the Amex agent at trial merely identified S16.06, a "cardmember's copy" which the State produced to him, and said he had "copies" of them in his files. Assuredly they did not come in the mailbox in September 1986, because one is dated January *1985*, and the other is dated *July* 1986. At trial, while the detective was identifying the boxes of evidence he received from Mrs. Floyd, the prosecutor openly removed an American Express folder from a box because, he said, it did not "belong" there. It must reasonably be presumed that S16.06, cardholder's copies of receipts of an Amex account, for which there was no warrant, and which presumably did not come out of the mailbox up to two years after they issued, may well have come from the evidence turned over by Mrs. Floyd, and were in the "errant" Amex folder removed from the box at trial by the prosecutor. The State certainly did not prove otherwise.

Moreover, merely removing a file from the box because it did not "belong" there is a clear admission of commingling and confusion of evidence, so that it cannot be represented as a fact that "the evidence in question was not tendered or referred to at trial," and that "none of [its] contents were [sic] used in the trial or to gain evidence which was admitted at trial."

While it is true the trial court held a hearing on the motion to suppress and denied it, as well as the motion to dismiss at trial, this alone does not mean it found the State had borne its burden to prove none of the evidence was used; the trial court deemed the letter not to be coercive and, therefore was not overly concerned with whether any evidence thus produced would be used. *No factual basis whatever exists to assert none of the evidence was used or introduced.*

It is also patently untrue that the evidence "clearly shows that she did not wish to assist in the defense but cooperated from the beginning with the State." In fact the evidence clearly shows she was

very concerned lest she be thought to be "cooperating" with the State, and that she expressly avoided any such implication, for she was aware of the need to protect herself as an attorney who had (or did have) an attorney-client relationship with the defendant. She expressly denied to the questioning prosecutor that she had ever, at any time, offered to donate legal assistance to the State in its prosecution. It may indeed be a reasonable inference that "she became anxious to distance herself from [Floyd]"; but how does this fact prove that *therefore* her particular response to the prosecutor's threat was entirely voluntary?

There is no evidence that Mrs. Floyd "was willing, if not anxious, for the State to have this evidence." This is distortion of the facts in the record; it is sheer imagination, as is the proof of "voluntariness" which the majority sees emanating from the fact that "Claire's" attorney requested the prosecutor to "put it in writing." The greenest lawyer seeking to protect his client demands a threat be put in writing.

But finally, the marvel of this fact-finding expedition is the naked statement, without sequiter, that the actual threat in the letter "was added after the assistant consulted the district attorney." What does this contribute towards proving the threat was not a threat, as the majority implies?

The *whole* truth as testified to by the prosecutor is that he and his boss decided to add the threat *after* his conversation with Mrs. Floyd's attorney. Yet the majority's version of this episode is offered in proof of the voluntariness and eager cooperativeness of "Claire's" actions, which are further proved, it seems, by the "fact" that she did not again consult with her lawyer after receiving the letter, but "called the detective about where to deliver the records and then did so, obtaining a receipt she had prepared." What do these statements mean? What do they prove? They are, respectively, a statement reciting only half of the evidence and then a statement which proves nothing; yet apparently their mere presence in the body of overwhelming "facts" is mesmerizing.

In *Rogers v. Richmond*, 365 U. S. 534 (81 SC 735, 5 LE2d 760), a case involving a coercive threat, the United States Supreme Court condemned this sort of judicial fact-finding, as well as the "facts" so found: "In the present case, while the trial judge ruled that each of petitioner's confessions was 'freely and voluntarily made and accordingly was admissible in evidence,' *he reached that conclusion on the basis of considerations that undermine its validity*. He found that the pretense of bringing petitioner's wife in for questioning 'had no tendency to produce a confession that was not in accord with the truth.' . . . [The Connecticut appellate court held]: 'Proper court authorization should have been secured before the defendant was removed from the jail. There is nothing about his illegal removal, how-

ever, to demonstrate that he was thereby forced to make an untrue statement. The same can be said concerning the refusal to admit counsel to see the defendant . . . before he was brought before the coroner.' [Cit.]" (Emphasis supplied.) Id. at 541-543.

The Supreme Court said in *Rogers*, at pp. 545-546: *"We are barred from speculating — it would be an irrational process — about the weight attributed to the impermissible consideration of truth and falsity which . . . may well have distorted, by putting in improper perspective, even [the trial court's] findings of historical fact. . . .* In coerced confession cases coming directly to this Court from the highest court of a State in which review may be had, *we look for 'fact' to the undisputed, the uncontested evidence of record.* [Cit.] *This is all that we may look to, in the absence of detailed state-court findings of historical fact. . . .* Of course, so-called facts and their constitutional significance may be so blended that they cannot be severed in consideration. . . . [I]n any event, there must be a foundation in fact for the legal result. [Cit.]" Id., 546.

In this case, the entire "factual" construction by the majority concludes (in reality, speculates) that this threatening letter did not coerce Mrs. Floyd, and that her fears of being implicated in Floyd's crimes and her concern to protect herself as a lawyer had no impact at all upon her response to the letter or vice versa, and that the evidence, *particularly the fact that her attorney requested the demand be in writing*, clearly proved "Claire" happily, eagerly and anxiously cooperated with the State. These speculations represented as "fact" are not merely false. They are also *irrelevant*, and they apply the wrong legal standard.

In *Bumper v. North Carolina*, 391 U. S. 543 (88 SC 1788, 20 LE2d 797), police officers merely pretended to have a warrant when they did not. Nothing so unpleasant as a *threat of criminal prosecution* was made. The subject of the search, Bumper's grandmother, testified she voluntarily, of her own free will, allowed the officers to search her house. Yet the Supreme Court held her consent was not voluntary, as a matter of law, for any consent was vitiated by the false claim of "lawful authority" to search, by which the officers "announce[d] in effect that the [subject had] no right to resist the search." The officers' act of pretending to have a warrant was "instinct with coercion"; that is, it was inherently coercive in inception and in nature, though by her own account it apparently brought Bumper's grandmother no actual fear. The threat of criminal prosecution made in this case was infinitely worse.

Although appellant does not complain on appeal of the trial court's refusal to suppress this illegal evidence, he complains of the prosecutor's misconduct in coercing the evidence, for which the obvious first remedy would be suppression. *United States v. Morrison*,

449 U. S. 361, 365-366 (101 SC 665, 66 LE2d 564). The allegation of prosecutorial misconduct therefore encompasses suppression of the evidence as a lesser remedy than dismissal. Moreover, the entire incident is one error, enumerated sufficiently to include the trial court's failure to suppress the evidence, for the coerced production and use of the evidence are inextricably intertwined with the appellant's right to have it suppressed if it is illegal. OCGA § 5-6-48 (f); see *Clark v. State*, 180 Ga. App. 280 (2) (348 SE2d 916).

In the Fourth Amendment right to be free from unreasonable search and seizure inheres the fundamental principle that the government does not have the right to simply demand whatever evidence it likes, under threat of criminal prosecution or other penalty. This is the bedrock upon which the Fourth Amendment rests. Out of it spring the requirements for warrant, probable cause, consent, lawful arrest, or exigent circumstances. See generally OCGA Title 17, Chapter 5. .

A third party possessing common authority over or other sufficient relationship to the premises or effects sought to be inspected or seized, may indeed consent voluntarily to search or seizure. See *United States v. Matlock*, 415 U. S. 164 (94 SC 988, 39 LE2d 242). But when the prosecution seeks to justify such a warrantless search or seizure by proof of consent, the burden is upon the prosecution to prove the consent was *voluntary*. Id.; *Schneckloth v. Bustamonte*, 412 U. S. 218, 224-265 (93 SC 2041, 36 LE2d 854). Whether the consent to a seizure was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined by a careful scrutiny of the "totality of all the surrounding circumstances," the inquiry being whether the seizure is the product of an essentially free and unconstrained choice of the party, or whether his will was overturned and his capacity for self-determination critically impaired. Id., pp. 225-226.

The United States Supreme Court in *Schneckloth* asseverated that the Fourth and Fourteenth Amendments require that a consent "not be coerced, by explicit . . . means, by implied threat or covert force." Id., p. 228. If a search or seizure is found to be coerced "by threats or force, or granted only in submission to a claim of lawful authority," it has been found invalid and the search or seizure unreasonable. Id., p. 233. But an act which is coercive by its nature, like this one, *vitiates any supposed consent*, (*Bumper*, supra) and when such an act is proved, the question of voluntariness is not a matter for speculation. *Rogers*, supra.

It is unnecessary to determine whether in this case the demand and threat were made upon Mrs. Floyd in her capacity as appellant's wife or as his attorney; or whether she was in fact his wife and/or his attorney when this letter was served upon her; or whether any privi-

lege was breached in either event; or whether she had been given authority of the documents or had possession of or access to the documents by virtue of her position of wife or attorney; or whether she could, in any case, have validly consented to turn over the documents as evidence. Viewing the prosecution's position in all these matters in its most favorable aspects, Mrs. Floyd's delivering up of this evidence was not voluntary. It was coerced, under a false claim of lawful authority. *Bumper*, supra. The threat informed her she had no right to resist the demand. Id.

She could not be prosecuted for "withholding evidence," for it is not a crime in Georgia simply to "withhold evidence," whatever that means. She could not even be prosecuted for obstruction of justice (see OCGA § 16-10-24), for one does not obstruct justice except by "knowingly and willfully obstruct[ing] or hinder[ing] any law enforcement officer in the *lawful discharge of his official duties*," (emphasis supplied), which this demand by threat clearly was not.

But this particular threat, though empty, was never idle, for the mere tender of an empty threat ensured the prosecutor a degree of immunity from suspicion of coercion, while at the same time, since he insisted on it so seriously as to put it in writing, he plainly meant *something* by it.

In any case, it is not necessary that Mrs. Floyd actually state that she was coerced and her delivery of the evidence was involuntary. The threat was "instinct with coercion," because the prosecutor "announce[d] in effect that [Mrs. Floyd had] no right to resist the [seizure]," (*Bumper*, p. 550) under threat of criminal prosecution.

With coercive threat proven, the *prosecution* has the burden to prove that none of the evidence obtained thereby was used. In *Wong Sun v. United States*, 371 U. S. 471, 485 (83 SC 407, 9 LE2d 441), the Supreme Court said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court *but that it shall not be used at all.* Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source, they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." (Emphasis supplied.) Under this statement of the law, I cannot find this constitutional violation was harmless beyond a reasonable doubt (see *Shepherd v. State*, 239 Ga. 28, 29 (235 SE2d 533); *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133)) because *as the State concedes,* it was analyzed and used to show appellant spent more money than he had incoming, and to establish his cash flow; clearly the State has failed to show none of it might have found its way into court, and in fact I conclude from the record that some of it did find its way into court and incriminated the defendant

by its nature.

" 'Whenever a party is deprived of his rights, the presumption of the law is that he has been injured unless the contrary plainly appears.' " *Massey v. State*, 220 Ga. 883, 894 (142 SE2d 832).

I do not think that the prosecutor's misconduct in obtaining this evidence, admittedly using it in the prosecution, and keeping it in such a state that it could not be (or was not) said one way or the other exactly what was contained in it or whether it was actually introduced, should be laid at the *appellant's* feet in the form of forcing appellant to prove this evidence was actually used at trial. To do so would invite the State to profit from its unlawful seizure of the evidence by failing to keep account of what was seized.

Whether the prosecutor's conduct in making this demand by threat can be viewed as "misconduct" for any purpose under the Rules and Regulations of the State Bar of Georgia, in the circumstances of this appeal, his making of the threat of criminal prosecution if appellant's wife/attorney resisted this seizure, while presumably knowing he could not lawfully do so, was misconduct in view of the most basic Fourth Amendment guarantee. See also Standard 56 of the Rules and Regulations of the State Bar of Georgia, Part IV. It was deliberate, "instinct with coercion" (*Bumper*, supra) and it did in fact coerce her to give up the evidence. The appropriate remedy for this misconduct (see *Wilcox v. State*, 250 Ga. 745 (301 SE2d 251)) was at the very least the suppression of the evidence. See *United States v. Morrison*, supra.

The State contends that the error if any, was harmless, even beyond a reasonable doubt, because the other legal evidence against Floyd was overwhelming. See *Hamilton v. State*, 239 Ga. 72, 76-77 (235 SE2d 515). In the first place, however, the State did not bear its burden to prove this illegal evidence was not used (see *Schneckloth*); therefore, we cannot say some of it is not part of the "overwhelming" evidence.

The threshold question is why, if the prosecution's proper case was so overwhelming, it would seek to obtain evidence as it did in this case; and why, if as the majority says the State had so many other legitimate sources of evidence, such as warrants for bank records, it failed to get a warrant for this evidence or issue a subpoena duces tecum. We can only conclude the State found it fruitful and necessary to demand production of this evidence under threat of criminal prosecution, for the reason stated in the letter: to seize evidence "to be used in the prosecution," and to lead to other, legal evidence. On principle, I cannot see how we can say this misconduct resulted in "harmless error," for since the majority has said it was not even error, there looms ahead the certain prospect that in another case, a prosecution will deliberately, qualmlessly seek to obtain evidence in this

fashion in hopes of ultimately obtaining enough good evidence to render any bad evidence "harmless," and then, by keeping it in such a condition as to make it virtually impossible to say whether it was used, contend the *defendant* cannot prove harm. The Supreme Court has said this suppression is necessary to "[deter] lawless conduct by [law enforcement] officers . . . or [to close] the doors of the . . . courts to any use of evidence unconstitutionally obtained. [Cit.]" *Wong Sun*, supra, p. 486.

Besides, it is difficult to see how the prosecution can show the error to be harmless in the face of overwhelming evidence, when obviously, as a threshold proposition, it considered this evidence important and necessary enough to obtain in this fashion while (as it now claims) there was available so much other legal evidence.

Upon the strongest and soundest constitutional grounds, I respectfully dissent.

I am authorized to state that Presiding Judge Banke and Judge Sognier join in this dissent.

DECIDED JULY 15, 1988 —
REHEARING DENIED JULY 26, 1988

*Randall M. Clark*, for appellant.
*W. Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.