A00A0132. ALFORD v. THE STATE.
A00A0133, A00A0751. HARTMAN v. THE STATE (two cases).
(534 SE2d 103)

ANDREWS, Presiding Judge.

Craig Alford, Donnie Hartman, and Johnny Hartman were tried jointly and convicted of several counts of aggravated assault and armed robbery. The sole issue on appeal is whether the trial court erred in dismissing one of the jurors and replacing him with an alternate juror. Appellants claim that their due process rights and their right to a fair, representative, and impartial jury were violated by

---

the dismissal and substitution. Because we conclude the trial court made an informed finding that the juror was incapacitated, we affirm.

The evidence at trial, taken in the light most favorable to the verdict, was as follows. On the night in question, several men were at Lawrence Fuller's house playing cards. Fuller said that he saw three men come in wearing ski masks, one of whom was carrying a gun. The men told Fuller and his friends to put their money on the table. After laying his money down, Fuller ran out of the house, and his friends followed. As they ran across the patio, Fuller heard two gunshots being fired.

Fuller and his friends hid in the backyard for a few minutes and then went around to the front of the house. They saw a car driving down the street, and as it passed them, the men inside tried to slide down on the seat and duck out of sight. Fuller said the men looked like the robbers so he and one of his friends got in a car and followed them. When the driver of the car saw he was being followed, he accelerated. The chase ended near Ft. Benning, where Fuller and his friend saw some military police. They stopped and told the police they were following some men they thought had robbed them. The military police then took up the chase and after less than a quarter of a mile saw the car about twenty feet off the road with three doors standing open. Police found one ski mask in the car and the other two ski masks near the car. The police picked up Alford walking by the side of the road. Alford first ran into the woods when he saw the officers but then came out and surrendered. Canine units found Donnie and Johnny Hartman in the woods.

Cleveland Farley, Fuller's brother-in-law, was also at Fuller's house that night. He said that about 15 minutes before the masked men came into the house, Johnny Hartman had come by and asked to talk to Fuller. Fuller told him to come back later, and he left. One of the other men who was playing cards testified that he recognized Johnny Hartman's voice when one of the masked men told them to put their money on the table.

The State also introduced into evidence Alford's confession in which he admits going into the house, being involved in the robbery, that shots were fired, and also being chased by the victims and later the military police.

After the jury found the three defendants guilty of all charges, defense counsel requested that the court poll the jury. When the judge asked juror Jackson, "was this your verdict?" Jackson replied, "Yeah. I'm a little confused, though, you know." Juror Jackson then replied that it was his verdict but when asked if it was still his verdict, said, "I don't know." The court then sent the jury back to con-

tinue deliberating. Shortly afterward, the jurors came back in, and the foreperson told the court:

> We have one juror that has not participated in any of the discussions, twice voted with everyone, changed his mind out here as you know. When we went back we tried to open discussion, find out, you know, what the problems was. This one juror will not participate in the conversations and his statement to all of us is he just wanted out, he did not want to be part of the jury and he wanted out.

The judge recharged the jury on their duty to deliberate and sent them out. The jurors again came back, and the foreperson again said the juror refused to participate. She asked if they could get another juror.

The trial court questioned the juror who refused to participate and asked him if he could attempt to reach a verdict on the evidence. The juror replied:

> Okay. When I back there I was discussing with them but that crowd back there be snappy. You know, they saying all kind of stuff. One called me racist and this and that, you know what I'm saying. So, I mean, I say what I had to say and they just bucked up at me, you know.

The court then asked the juror if he was instructed to go in and deliberate, would he do so. The juror replied:

> Well, I was working with them, you know what I'm saying, and I mean, I had, you know. You know, this is what I say. They can't make me say nothing. You know, they trying to get me to say what they saying. You know, there was two or three of us saying one thing and then when it came down to it the rest of them just went all together with one thing. You know, I'm just different from them. I mean, you know, I say my word and they got crazy when I said what I said.

The judge then asked the juror if he was willing to participate with the other jurors or did he simply want to be off the jury. The juror replied, "I want off."

At that time, the court found the juror was unable to serve and replaced him with an alternate. Defense counsel all moved for a mistrial, which was denied. The jury resumed deliberations and later came back with another guilty verdict as to all three defendants. This appeal followed.

OCGA § 15-12-172 provides in pertinent part:

If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated.

This Court has held that this Code section "implicitly authorizes the trial court to exercise its discretion with regard to excusing a juror from the panel." *Remine v. State*, 203 Ga. App. 30, 32 (416 SE2d 326) (1992). But, we have held it is error for the trial court to excuse a juror who may have harbored reasonable doubt. *Stokes v. State*, 204 Ga. App. 141 (418 SE2d 419) (1992).

In *Stokes*, after approximately thirty minutes of deliberation, the foreperson told the judge that two jurors either could not or would not "make a decision because they feel that there has not been enough evidence either way." Id. at 142. The judge told the jury that each juror must vote, but if the two jurors would not vote, he would replace them. After returning to the jury room, the two jurors would not vote, and the court dismissed them and replaced them with two alternates. Id.

On appeal, this Court noted that the judge never inquired into the jurors' reasons for not voting and there was no showing that the jurors were in any way incapacitated. *Stokes*, supra. We held that the trial court should have either recharged the jury on the burden of proof or declared a mistrial. Citing *Peek v. Kemp*, 746 F2d 672, 681 (11th Cir. 1984), the court held that "alternate jurors do not serve to substitute for minority jurors who cannot agree with the majority," and concluded that the trial court erred because it dismissed two jurors who may have harbored reasonable doubt. *Stokes*, supra.

This case differs from *Stokes* in several important aspects. Here, the trial court did inquire of the juror at some length as to why he refused to participate. The juror never said he did not think there was enough evidence to find the defendants guilty; rather, his problems seem to have been with his perceptions about the other members of the jury. Also, the juror had reached the point where he refused to participate in deliberations and would only say that he "wanted off" the jury. A trial judge may, in his discretion, dismiss a juror and replace him with an alternate when he is convinced that the juror's ability to perform his duties is impaired. *Smith v. State*, 266 Ga. 827, 829 (470 SE2d 674) (1996).

*Cloud v. State*, 235 Ga. App. 721 (510 SE2d 370) (1998), is almost directly on point. In *Cloud*, the juror sent the court a note stating he

could not "take this anymore." "It is making me sick." Id. When the court questioned him, the juror said that he could not judge Cloud and did not want to go back to the jury room. Id. This Court found that the trial judge did not abuse her discretion in replacing the juror with an alternate when she took the juror at his word that he could not judge Cloud. Id. at 722. The court also rejected Cloud's argument that the juror was actually expressing a belief in Cloud's innocence. Id. Further, the court held there was no evidence of racial discrimination even though a black juror was replaced by a white juror because the sole reason the juror was removed was his reluctance to continue serving. Id.

Likewise, in the case before us, the trial court removed juror Jackson only after Jackson made it clear that he would not participate in any discussions with his fellow jurors and kept repeating that he wanted "off" the jury. Also, as discussed above, juror Jackson never stated that he believed the defendants were innocent but rather described problems dealing with his fellow jurors and participating in deliberations. Moreover, it was only after recharging the jury on their duties and after several lengthy discussions with the juror, that the trial court determined that the juror was unable to continue serving on the jury.

Thus, where the trial court has made an informed finding of incapacity, we cannot say that it abused its discretion in this matter. *Cloud*, supra. There was no error.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED APRIL 17, 2000 —
RECONSIDERATION DISMISSED MAY 30, 2000.

*William P. Nash, Jr.,* for appellant (case no. A00A0132).
Craig D. Alford, *pro se.*
*John T. Martin,* for appellant (case no. A00A0133).
*Wallace A. Kitchen,* for appellant (case no. A00A0751).
*J. Gray Conger, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney,* for appellee.