## A11A1245. CALMES v. THE STATE.
## A11A2203. ALLEN v. THE STATE.
(719 SE2d 516)

MCFADDEN, Judge.

Following a joint jury trial, Brandon Otis Calmes and Dennis Allen were each convicted of one count of armed robbery, four counts of aggravated assault and three counts of possession of a firearm during the commission of a crime. We have consolidated their appeals. As to Calmes's case, we find that the trial court did not err by refusing to charge the jury on the defense of coercion because the evidence did not support the charge. We also find that the trial court did not manifestly abuse its discretion by denying Calmes's motion for mistrial and instead substituting an alternate juror for a juror who had attempted to visit one of the crime scenes. We remand Allen's case to the trial court for reconsideration of appellate counsel's motion to withdraw because the record does not reflect that Allen knowingly waived his right to appellate counsel.

When reviewing a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Darnell v. State*, 257 Ga. App. 555, 556 (1) (571 SE2d 547) (2002). So viewed, the evidence shows that the victims, George Grover and his employee, Tommy Chapman, sold home theater and surround sound systems from the back of Grover's GMC Yukon SUV. Grover would buy the components from a factory in California, assemble them and then sell them.

On August 26, 2008, the victims decided to sell systems in Hiram, Georgia, a growing area with new construction that had been

a strong selling area before. They drove to a Bank of America parking lot and began speaking with the occupants of a gold Nissan Quest van: co-defendants Calmes and Allen, a woman named Kelsey Manning and a third man. The victims asked the occupants of the van if they would like to buy a sound system. They appeared interested, so one victim showed them a system. Manning said they had to go down the street to get money. The victims followed the van to a cul-de-sac in an apartment complex.

Manning testified that while they were driving to the cul-de-sac, Allen said that the equipment was probably stolen, so he might as well steal it himself. Calmes said that was stupid. Manning asked to be dropped off because she did not want to be involved. Allen turned to her, pointed a gun at her, and told her no. Manning was terrified; she had her baby with her. Calmes did not react, but he seemed scared. Allen called another man to help with the robbery because that man also had a gun.

Once the van and the SUV arrived at the apartment complex, Allen walked off saying he was going to get the money, but he really went to meet the man he had called for help. While the victims were waiting for the money, one of them began loading the equipment into the van to give the buyers a sense of ownership and to make it harder for them to back out of the deal. In the meantime, while Calmes stayed in the van, Manning was speaking with the victims, offering more money than they had agreed upon for additional equipment. The victims became suspicious and began removing the boxes from the van. Allen returned with his armed help. When one victim turned around, one of the men pulled out a gun, cocked it, and said, "This is a robbery. Don't make it a murder."

That victim took off running, but was tackled, beaten and temporarily knocked unconscious with the butt of a gun. The other victim lay on the ground, and someone hit him with a gun. Allen told Calmes to chase after the victim, but Calmes said no, he would just help load the equipment. They loaded the equipment, got back into the van, and drove away

The victims got into the Yukon, called 911 and began chasing the van, following it into a subdivision. They relayed the van's license plate number to the police.

Calmes, the driver of the van, was terrified and driving errati-cally. He drove the van to Allen's house, where they parked it in the garage, closed the garage door and began wiping it down. They unloaded the equipment into Allen's house.

*Case No. A11A1245*

1. Calmes argues that the trial court erred by refusing to instruct the jury on his defense of coercion. Under OCGA § 16-3-26,

which defines that defense, "[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury."

"Unless the danger of present and immediate violence coincides with the commission of the forbidden act, a trial court may refuse to give a charge on coercion." (Citation omitted.) *Gordon v. State*, 234 Ga. App. 551, 552 (507 SE2d 269) (1998). Even assuming that Allen's pointing the gun at Manning caused Calmes to feel threatened, the threat occurred while they were in the van, driving to the scene of the robbery and assault, not during the crimes themselves. And before the victims were robbed and assaulted, Allen walked off for a period of time; Calmes remained in the van and did not leave, even though he had the opportunity. Because any threat of violence to Calmes did not coincide with the robbery and assault, the trial court did not err in refusing to give a charge on coercion. "Since none of [the] evidence related to present and immediate violence toward [Calmes] so as to justify his criminal conduct, and there was no showing of a reasonable fear of immediate violence, the trial court correctly declined to give the requested charge." Id. See also *McDaniel v. State*, 169 Ga. App. 254, 254-255 (2) (312 SE2d 363) (1983) (court did not err in refusing to give requested charge on defense of coercion because although defendant presented evidence that he had been kidnapped at gunpoint and forced to cash a check, the proceeds of the theft at issue, the kidnapping occurred "subsequent to the events determinative of defendant's guilt or innocence of the crime with which he was charged").

2. Calmes argues that the trial court erred by replacing a juror who was disqualified after the jury originally reached a guilty verdict. He contends that the alternate who replaced the disqualified juror had been tainted by the original guilty verdict, and that the trial court instead should have granted a mistrial. The jury initially returned a verdict finding Calmes and Allen to be guilty. But when polled, one of the jurors said that she needed more time, so the trial court directed the jury to continue deliberations. After an overnight recess, the trial court discovered that one of the jurors — not the juror who had said she needed more time — had independently visited Allen's neighborhood during a break in the trial, although she did not find his house. Calmes and Allen moved for a mistrial. The trial court denied the motion for mistrial, excused the juror who had driven by Allen's neighborhood, and replaced her with an alternate juror. The trial court then instructed the jurors to begin their deliberations anew.

Calmes asserts that the newly composed jury was tainted by the

earlier reading of the guilty verdict, thus entitling him to a mistrial. "[T]he decision whether to grant or deny a motion for mistrial rests within the trial court's discretion, and we will not disturb the court's ruling absent a manifest abuse of that discretion which threatens the defendant's right to a fair trial." (Citation omitted.) *McConnell v. State*, 263 Ga. App. 686, 688 (3) (a) (589 SE2d 271) (2003). We find that the trial court did not manifestly abuse its discretion in replacing the juror with the alternate instead of granting a mistrial. Calmes "could not have been harmed by the alternate juror's discovering immediately before entering the jury room what [s]he surely would have discovered soon after entering the jury room." *Tanner v. State*, 242 Ga. 437, 438 (2) (249 SE2d 238) (1978). See also *Murray v. State*, 276 Ga. 396, 398-399 (4) (578 SE2d 853) (2003) (court did not abuse its discretion in replacing juror with alternate after verdict had been announced); *Alford v. State*, 244 Ga. App. 234 (534 SE2d 103) (2000) (same). Calmes's claim that the reading of the verdict tainted the jury is purely speculative. *Tolbert v. State*, 300 Ga. App. 51, 55 (2) (684 SE2d 120) (2009). Removing the juror and replacing her with an alternate juror was an adequate remedy to cure any prejudice. Id.

### Case No. A11A2203

3. Allen asserts that he did not knowingly waive his right to appointed appellate counsel but nevertheless has been denied appellate counsel. On December 1, 2009, after the trial court had entered judgments of conviction, Assistant Public Defender Brandon Bullard entered an appearance on Allen's behalf and filed a motion for new trial. On March 17, 2011, Bullard filed documents seeking to withdraw as Allen's attorney because his "disagreement on counsel's choices of strategy in the prosecution of his appeal [had] risen to such an unreasonable level that [his] further representation [was] impossible." Bullard asserted that he had mailed his notice of intent to withdraw to Allen. On March 30, 2011, the trial court granted Bullard's request to withdraw as Allen's attorney, noting that Allen had not filed an objection. On May 11, 2011, the trial court denied Allen's motion for new trial. Allen filed a pro se notice of appeal.

Allen sought the appointment of new appellate counsel from the Paulding Judicial Circuit Public Defender Office, but the circuit public defender denied his request in June 2011. See *Odum v. State*, 283 Ga. App. 291, 292 (641 SE2d 279) (2007) (following passage of the Indigent Defense Act of 2003, OCGA § 17-12-1 et seq., public defender offices, not trial courts, appoint attorneys in indigent cases). Consequently, Allen is proceeding pro se.

Allen asserts that he did not make a knowing and intelligent

decision to waive appellate counsel. A convicted indigent defendant has the right to appointed counsel on direct appeal. *Douglas v. California*, 372 U. S. 353, 357 (83 SC 814, 9 LE2d 811) (1963); *Garland v. State*, 283 Ga. 201, 202 (657 SE2d 842) (2008). To protect this right, the Indigent Defense Act of 2003 requires that the circuit public defender provide representation in any direct appeal of an action prosecuted in the superior court "in which there is a possibility that a sentence of imprisonment or probation or a suspended sentence of imprisonment may be adjudged." OCGA § 17-12-23 (a) (1), (4); *Bynum v. State*, 289 Ga. App. 636, 637 (658 SE2d 196) (2008).

A defendant may waive his right to counsel during post-conviction proceedings, but "the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel." (Citations, punctuation and emphasis omitted.) *Weber v. State*, 203 Ga. App. 356, 357 (416 SE2d 868) (1992). Additionally, a defendant's "insistence upon the appointment of counsel who [will] accede to his demands and pursue a frivolous and baseless line of defense" may amount to "the functional equivalent of a knowing and voluntary waiver of counsel." (Citation and punctuation omitted.) *Phipps v. State*, 200 Ga. App. 18, 19 (406 SE2d 493) (1991). See also *Walker v. State*, 288 Ga. 174, 177-178 (2) (a) (702 SE2d 415) (2010) (trial court was authorized to conclude that defendant's expression of dissatisfaction with his third lawyer on the day of trial was a dilatory tactic that was the functional equivalent of a knowing and voluntary waiver of appointed counsel); *Hobson v. State*, 266 Ga. 638, 638-639 (2) (469 SE2d 188) (1996) (trial court was authorized to find that defendant's discharge and employment of counsel was a dilatory tactic that amounted to the functional equivalent of a knowing and voluntary waiver of counsel); *Staples v. State*, 209 Ga. App. 802, 803-804 (3) (434 SE2d 757) (1993) (trial court was authorized to find that defendant's demand for a change of counsel was a dilatory tactic that amounted to the functional equivalent of a knowing and voluntary waiver of counsel).

The record does not reflect that the trial court determined that Allen knowingly waived his right to counsel. Compare *Phillips v. State*, 267 Ga. App. 733, 736-737 (3) (601 SE2d 147) (2004) (defendant knowingly and voluntarily waived the right to counsel when, at hearing on attorney's motion to withdraw as counsel, trial court explained the dangers of defendant representing himself, and defendant acknowledged that he understood the dangers, requested that his appointed counsel be allowed to withdraw, and stated that he wished to represent himself). Nor does the record reflect that the trial court found a "functional equivalent of a knowing and volun-

tary waiver of appointed counsel." *Hobson*, 266 Ga. at 638-639 (2).

Under Uniform Superior Court Rule 4.3 (1), an attorney's request to withdraw "will be granted unless in the judge's discretion to do so would delay the trial of the action or otherwise interrupt the orderly operation of the court or *be manifestly unfair to the client*." (Emphasis supplied.) Since the record does not show that the trial court determined whether Allen actually or functionally waived his constitutional right to appointed appellate counsel, we remand his appeal for the trial court to reconsider Bullard's motion to withdraw in light of Allen's right to counsel.[1] Upon the entry of a new order resolving the motion to withdraw, Allen may file another appeal to challenge his convictions. See, e.g., *Thomas v. State*, 281 Ga. 550, 551 (1), n. 1 (640 SE2d 255) (2007).

We observe that should the trial court determine that Allen has not waived his right to appointed appellate counsel yet nonetheless grant Bullard's motion to withdraw, leaving Allen *without counsel in spite of his nonwaiver of the right*, Allen is not without remedy. The circuit public defender already has denied Allen's request for new appellate counsel.

> In essence, therefore, [Allen] is asserting that the public defender has failed to fulfill the duties prescribed by the [Indigent Defense Act]. Although the trial court was without the authority to [appoint new appellate counsel], we find that [Allen] is not without recourse as he may seek relief by application for a writ of mandamus.

(Citations omitted.) *Bynum*, 289 Ga. App. at 637-638. Should Allen choose to appeal any ruling in such a mandamus proceeding, he should direct his appeal to the Supreme Court of Georgia, which has exclusive jurisdiction over cases involving the grant or denial of mandamus. See id. at 637, n. 3.

*Judgment affirmed in Case No. A11A1245. Phipps, P. J., and Andrews, J., concur. Case remanded with direction in Case No. A11A2203. Phipps, P. J., concurs. Andrews, J., concurs in the judgment only.*

DECIDED NOVEMBER 3, 2011 —
RECONSIDERATION DENIED NOVEMBER 22, 2011 —

*Brandon A. Bullard*, for appellant (case no. A11A1245).

---

[1] We do not address the various motions Allen has filed in this court; given our decision to remand his case, his motions are moot.

Dennis Allen, *pro se* (case no. A11A2203).
*Donald R. Donovan, District Attorney, Dana J. Norman, Thomas A. Cole, Assistant District Attorneys, Drew Lane, Jr.*, for appellee.