**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2039. HATCHER v. THE STATE.

BOGGS, Judge.

A jury found Willie Hatcher guilty on three counts of child molestation and one count of incest for acts against the victim, his five-year-old niece.[1] Following the denial of his amended motion for new trial, Hatcher appeals, contending that the trial court erred in allowing him to represent himself, and arguing that the admission of hearsay statements violated his rights under the Confrontation Clause. For the following reasons, we affirm.

On February 27, 2003, Hatcher was arrested on allegations that he molested the victim. He was indicted on August 2, 2005. At arraignment on October 11, 2005,

---

[1]The jury also found Hatcher guilty of invading the privacy of another for "secretly observing [his adult cousin] through a hole in the bathroom wall."

Hatcher appeared pro se, and the following colloquy took place between the trial court, the State and Hatcher:

The Court: Is someone standing in now for [Hatcher], or do we need to deal with that?

[The State]: Your Honor, I - - I'm not sure. I don't know if he's filled out a form for a public defender, or if he plans on hiring somebody.

Hatcher: That's what I was in the process of today, sir. I had to go see my child support caseworker, and I was in the process of getting a lawyer in Hinesville today. And that's why I made it back late.

But I don't know where the office at, Mr. Jonathan Merritt. You probably know him, but I couldn't find his office; I don't know his number. Somebody just introduced me to him the other day.

The Court: Okay. Can you afford to hire an attorney?

Hatcher: Yes, sir.

The Court: Okay. You're employed?

Hatcher: Yes, sir, I'm employed.

The Court: Okay. Would you - - would you be willing to allow the public defender to assist you today simply to enter a not guilty plea to the charge?

Hatcher: If that's what it is. That's all I'm going to put in is a not guilty.

The trial court then allowed the public defender to assist Hatcher in the entry of his plea. After accepting the plea, the trial court "[f]urther note[d] the representation to the Court that the defendant is in the process of obtaining private counsel. (To Mr. Hatcher) So you must go ahead and do that." When Hatcher replied, "Okay," the trial court advised, "And you'll have ten days from this date to file motions in the case. So you need to go ahead and get in touch with your attorney and - - and get him retained." The trial court then considered Hatcher's prior convictions, and set bond at $15,000. On October 14, 2005, Hatcher posted the bond using his mother's residence as security.

At a hearing on November 17, 2005, before a different judge, Hatcher again appeared pro se:

The Court: Okay, Mr. Hatcher. Who's your lawyer sir?

Hatcher: Jonathan Merritt.

3

. . .

The Court: Nathaniel Merritt in Statesboro?

Hatcher: (Nods affirmatively)

The Court: And have you retained him yet?

Hatcher: I ain't been able to make contact with him.

 . . .

The Court: Well, I mean, you know, the calendar runs every day, and I mean, December the 5th's going to be here shortly. . . . So I would suggest that you make a better effort to try to contact him; okay?

Hatcher: All right.

The State: Your Honor, in fact the defendant announced on October the 11th that he was going to hire Jonathan Merritt, and that was, you know, a month ago. So apparently this has been in the plan.

The Court: Well, I mean, I don't know whether you qualify for the public defender to represent you or not. I don't have any idea about that. If you're unable to retain a lawyer, then you can make an application. If you qualify they'll appoint you a lawyer.

But we can't do everything for you. You have to do that yourself and - - things. And if you don't you're going to get up here on jury selection day, and you're going to be in an awkward situation when you try to compete with one of these lawyers . . . you're going to have an uphill battle. You understand that?

Hatcher: Yes, sir.

The Court: So you're going to get you a lawyer?

Hatcher: (Nods affirmatively)

The Court: And when you going to do that? Now you told them back in October you were going to get a lawyer. You haven't done that yet.

Hatcher: If I ain' t got him by then, it's just on me.

. . .

The Court: Everything'll be on you. Well, I just want you to clearly understand that everything's going to be on you now if you don't get you a lawyer.

On December 5, 2005, Hatcher appeared before a third trial judge, again pro se:

The Court: Are you feeling like Perry Mason?

Hatcher: No, sir.

The Court: Are you about ready to handle a jury trial for yourself?

Hatcher: If that's what it takes, sir. I'm ready.

The Court: Well, why don't you have an attorney?

Hatcher: Well, I had supposed to . . . got in contact with Mr. Jonathan Merrit[t] but I didn't have - - well, I had paid him money on it but I didn't have enough money to - -

The Court: Here - - here we are at jury selection.

Hatcher: Yeah.

The Court: So, what's going to happen?

Hatcher: I don't got no choice but to go with . . . a public defender.

. . .

The Court: I mean, you know, the public defender . . . they don't like getting a case one day before jury selection, you know.

6

[The State]: Your Honor, he's been before the Court before in this situation. I don't know if it was you but . . . actually several times and advised to get an attorney.

The Court: Yeah.

[The State]: So, this is not the first time he's been in this situation in this case.

The Court: I'm - - yeah. I'm not inclined to - - you see Mr. Joseph right there; (Indicating) you see Mr. Messenger right there; (Indicating) they - - they can't be prepared for a jury trial one day before trial term and you suddenly say I want to get a public defender, you know. Now, have you talked to [the prosecutor] about working this matter out?

Hatcher: No.

The Court: Do you even want to?

Hatcher: No.

The Court: Then I guess we'll pick a jury.

Hatcher: That will work.

The Court: I'll see you tomorrow morning to pick a jury.

The next day, December 6, when Hatcher appeared pro se, the trial court asked the State, "what is the plea offer to Mr. Hatcher?" The State responded that it did not have a defense attorney with whom "to discuss plea negotiations." The court then instructed the State to "discuss it with [Hatcher]." After enumerating the charges against Hatcher and the possible sentence for each count, the court stated: "Seventy-five years is what he's facing in the penitentiary. Now, sit down, Mr. Hatcher, and [to the prosecutor], you go sit beside him and, [to Hatcher's mother], you go over there and sit there too and tell him what your plea offer is . . . . we're off the record." After some discussion off the record, court resumed:

> The Court: All right. [to the prosecutor] So, y'all weren't able to work anything out [ ]?
>
> [The State]: No, Your Honor. We were not.
>
> The Court: All right. Now, Mr. Hatcher, you got a choice now: You can either have a trial with just me being the judge or you can have a trial by jury and we'll . . . select a jury."

Hatcher indicated that he preferred a jury trial.

After the jury was selected, the court announced that trial would begin on December 14. The court then asked Hatcher to approach the bench:

8

The Court: Now, Mr. Hatcher, come on up here.

Hatcher: (Complies)

[Hatcher's] mother: Judge - -

The Court: Yes, ma'am.

[Hatcher's] mother: - - by him doing this - - so he - - so he appointing his own, so he ain't got no - -

The Court: He wanted it - -

[Hatcher's] mother: No.

The Court: We've been telling him for months to get a lawyer.

[Hatcher's] mother: [to Hatcher] Get you a lawyer.

The Court: Get a lawyer. Get a lawyer. Get a lawyer. He never did and never applied for the public defender and it's time to go to court.

[Hatcher's] mother: So I have to be here with him?

The Court: You can - - I'll let you be with him.

The trial court then instructed Hatcher to bring any witnesses to court and that if he wanted "subpoenas to make people come . . . you can go to the clerk and she'll give you a subpoena and it'll order them to be here." After further discussion concerning witnesses, Hatcher again asserted that he was going to retain counsel:

The Court: Now, Mr. Hatcher, I got one more thing I want to tell you on the record here.

[Hatcher]: I got you.

The Court: You can still go hire an attorney.

Hatcher: Yes, sir.

The Court: You understand?

Hatcher: Yes, sir.

The Court: It's not too late - -

Hatcher: Yes, sir.

The Court: - - to go hire an attorney.

Hatcher: Yes, sir. That's what I'm planning on doing. Yes, sir.

The Court: Go get you one.

Hatcher: Yes, sir.

Eight days later, however, on the morning of trial, the following colloquy took place:

The Court: Are you ready to proceed, Mr. Hatcher?

Hatcher: I have no choice, sir.

The Court: Sir?

Hatcher: I have no choice.

The Court: Well, do you have anything you want to say?

[The State]: He should have got an attorney . . .

The Court: [to the prosecutor] Well, how many times have judges been telling him to get an attorney. . . ? I mean, I've told him several times, and every other judge has told him too. I mean, you know, what can you do? I mean, if somebody says, "I'm not going to get an attorney," does that mean he never - - that means he doesn't ever have to go to court? Well, eventually you've got to go to court.

Hatcher then explained to the court that just prior to trial, he rejected another plea offer from the State. When the State informed the court that it served Hatcher with a recidivist notice, the court asked Hatcher if he understood the notice. Although Hatcher replied, "Yes, sir," the court explained what "recidivist means," and told Hatcher that it would not have discretion to sentence him to anything other than the maximum sentence. The court again asked Hatcher if he wanted to discuss the State's plea offer, and again Hatcher declined. The State then called its first witness and the trial proceeded.

1. Hatcher contends that the trial court erred when it required that he represent himself "without either appointing counsel . . . or determining on the record that [he] had validly waived his constitutional right to counsel." He argues that he did not waive his right to counsel, but merely acquiesced in the absence of counsel, and that his statement the day before trial that he "got no choice but to go with a public defender" indicated that he wished to be represented by counsel at trial. He argues further that had the trial court made the proper inquiry regarding why he appeared without counsel, it would have discovered that he was indigent rather than dilatory. Finally, Hatcher contends that the court should have granted a continuance to ensure that he had adequate time to prepare a defense.

12

During several hearings, from arraignment up until the day of jury selection, Hatcher repeatedly stated that he could afford to hire counsel and was in the process of doing so. And for a non-indigent defendant

> the constitutional right to counsel only entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and *uses reasonable diligence* to obtain his services. Since a non-indigent defendant's right to counsel is predicated upon his own diligence, a failure on his part to retain counsel may constitute a waiver of the right to counsel. Thus, when presented with a non-indigent defendant who has appeared for trial without retained counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control. Notwithstanding a defendant's present verbal insistence upon his right not to be tried without counsel, his own past actions may nevertheless demonstrate that the right has been waived. *Since a non-indigent defendant's right to counsel is predicated upon his own diligence, a failure on his part to retain counsel may constitute a waiver of the right to counsel*.

(Citations and punctuation omitted; emphasis supplied.) *Collins v. State*, 269 Ga. App. 164, 165-166 (603 SE2d 523) (2004). "Whether a particular defendant has exercised 'reasonable diligence' in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel

13

is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion." (Citation and punctuation omitted.) Id. at 166.

The record here reveals that Hatcher repeatedly claimed, over a period of three months, that he was in the process of retaining counsel, and he was advised on multiple occasions by the trial court to "make a better effort" to do so. The trial court reminded Hatcher of the upcoming trial date and the likely sentence he would face if convicted. Even following jury selection, the court reminded Hatcher that he was told at every appearance to hire counsel, after which Hatcher still insisted that he was planning to retain counsel for trial set to begin the following week. Yet, when trial began, Hatcher appeared pro se, claiming that he "ha[d] no choice" but to proceed to trial. Under these circumstances, the trial court did not abuse its discretion in apparently concluding, by proceeding with trial and refusing to delay the proceedings, that Hatcher did not exercise reasonable diligence in procuring counsel. See id. at 166-167 (no error in failing to delay proceedings where defendant repeatedly cautioned that case would proceed to trial as scheduled despite defendant firing counsel and making little effort to obtain new counsel); see also *Johnson v. State*, 188 Ga. App. 411, 413 (3) (373 SE2d 93) (1988) (court did not abuse its discretion in denying motion for continuance where defendant "utterly disregarded" the court's

14

instructions to obtain counsel). Moreover, contrary to Hatcher's argument here, the court was not required to give Hatcher a warning of the dangers of proceeding pro se[2] because such requirement applies "*only* in the context of a waiver of the right to counsel by election of the countervailing right of self-representation.[Cit.]" (Emphasis in original.) *Burnett v. State*, 182 Ga. App. 539, 542 (1) (356 SE2d 231) (1987). It does not apply where, as here, the waiver of the right to counsel was based upon Hatcher's own failure to exercise the requisite diligence. Id.

Hatcher also argues that his statement before jury selection indicated that he wished to be represented by counsel, and that the trial court should have made the proper inquiry to determine that he was indigent. Just prior to jury selection, when the court inquired as to why Hatcher appeared without counsel, Hatcher stated that he had paid an attorney money but "didn't have enough money," and that he had "no choice but to go with . . . a public defender." The trial court explained that generally, public

---

[2]Moreover, Hatcher was no stranger to the criminal justice system. In 1992, he was adjudicated delinquent for the aggravated molestation of another cousin who was then nine years old; in 1995, he received first offender treatment for theft by shoplifting; in 1996, he pled guilty to two counts of the sale of cocaine and one count of possession of cocaine with intent to distribute; and in 1997, he entered a negotiated plea to robbery.

defenders "don't like getting a case" with one day's notice, and that Hatcher could not, the day before trial, "suddenly say [he] want[s] to get a public defender."

Even though the court informed Hatcher that the public defender preferred not to receive appointments with only a one-day notice, Hatcher had an additional week prior to trial within which he could have applied for appointed counsel. And upon reviewing the many colloquies between Hatcher and the trial court, we see no error in the court's failure to inquire into Hatcher's indigency following his comment that he had "to go with . . . a public defender," where Hatcher: asserted at arraignment that he was employed and could afford to hire counsel of his choosing; was advised by the court, weeks before trial, that it was his responsibility to apply for appointed counsel if he desired to do so;[3] first raised the issue of a public defender on the day of jury selection; apparently made no effort to apply for appointed counsel even after having another week before trial to do so; and then insisted, after suggesting a public defender, that he still planned to hire counsel for trial. See *Burnett*, supra, 182 Ga. App. at 542 (1).

---

[3] See *Bynum v. State*, 289 Ga. App. 636, 637 (658 SE2d 196) (2008) (following the passage of the Georgia Indigent Defense Act of 2003, defendants apply directly to the public defender offices for indigent representation); see also OCGA §§ 17-12-1, 17-12-23 (b).

Hatcher waived his right to counsel by failing to exercise diligence to retain counsel and by making no effort to apply for appointed counsel. Under these circumstances, we cannot say that the trial court erred in allowing him to represent himself at trial.

2. Hatcher contends that the admission of the hearsay statements of the victim, who did not testify at trial, violated his rights under the Confrontation Clause. He complains that the State failed to notify him prior to trial of its intent to introduce the victim's hearsay statements, in violation of the Georgia Supreme Court's decision in *Hatley v. State*, 290 Ga. 480, 483-484 (I) (772 SE2d 67) (2012) (prosecution required to notify defendant within reasonable period of time prior to trial of intent to use child victim's hearsay statements).

Hatcher failed to object to the admission of this evidence, but even if he had, any error in the admission of the hearsay was harmless as it was cumulative of other evidence of the molestation, in particular, the testimony of the victim's sister who witnessed the acts. While Hatcher argues that the victim's sister was unresponsive to some of the questioning, and "was far from the most articulate, forthcoming witness," her statements concerning the acts she witnessed Hatcher commit against her sister, were admissible and consistent with the evidence Hatcher complains was

inadmissible. See *Hatley*, supra, 290 Ga. at 485 (II) (even if hearsay statements were erroneously admitted, error was harmless beyond a reasonable doubt where such statements were cumulative of properly admitted evidence); *Welch v. State*, 318 Ga. App. 202, 206 (1) (733 SE2d 482) (2012) (even if hearsay was erroneously admitted in violation of Confrontation Clause, no reversible error where hearsay was cumulative of other evidence); *In the Interest of S. S.*, 281 Ga. App. 781, 783-784 (637 SE2d 151) (2006) (officer's testimonial statements concerning what the victim conveyed concerning molestation were cumulative of other properly admitted testimony). There could therefore be no basis for reversal on this ground.

*Judgment affirmed. Doyle, P. J. and Andrews, P. J., concur.*