311 Ga. 485
FINAL COPY

S21A0091, S21X0092.  ALLEN v. DAKER; and vice versa.

NAHMIAS, Presiding Justice.

At a jury trial in 2012, Waseem Daker was found guilty of malice murder and other crimes. Daker had hired or was appointed four attorneys, all of whom were allowed to withdraw before or near the beginning of the trial; he ultimately elected to expressly waive his right to counsel so that he could represent himself (commonly referred to as proceeding "pro se") during the trial. After Daker was convicted, however, he repeatedly asked for appellate counsel to be appointed to represent him, but those requests were denied, so he had to continue to represent himself. His pro se motion for new trial was denied, and his pro se direct appeal resulted in his convictions being affirmed.

In 2017, Daker filed a petition for habeas corpus asserting 438 grounds for relief, all of which the habeas court denied. In his

subsequent application to this Court for a certificate of probable cause to appeal, Daker specifically claimed only that the trial court erroneously denied his constitutional right to appellate counsel and that his requests for a determination of his indigency status for purposes of having counsel appointed were improperly delegated to and erroneously denied by the circuit public defender's office. In 2019, this Court issued an order granting Daker's application, vacating the habeas court's order with regard to the two claims that Daker had raised in his application, and remanding the case with direction to the habeas court to identify which of his 438 grounds specifically implicate those claims, consider those grounds based on the evidence already presented, and then issue thorough findings of fact and conclusions of law as to those grounds.

On April 29, 2020, the habeas court entered a new final order, in which it incorporated verbatim from its original order the findings of fact and conclusions of law on Daker's 438 grounds, all of which the court summarily concluded were "without merit." After specifically analyzing the applicable law and the record with regard

to the two claims that Daker had raised in his application, however, the habeas court concluded that "[t]he record does not show that [Daker] voluntarily waived the right to counsel on appeal as required" and that, in ruling that Daker was not indigent for purposes of his post-conviction proceedings, the trial court "relied on a previous determination of indigency from over a year earlier." Despite these specific conclusions, the habeas court also said that it must remand the case to the trial court to determine if Daker was entitled to appellate counsel — and then the habeas court ended the order by saying that the entire habeas petition was denied.

Warden Marty Allen appeals the habeas court's order, arguing that the court erred in remanding the case to the trial court and that this Court should remand the case to the habeas court to determine if Daker was entitled to appellate counsel. In a cross-appeal, Daker argues that the habeas court erred by not granting him a new direct appeal based on the improper denial of his constitutional right to appellate counsel; he asks this Court to decide that claim without a remand to the habeas court.

As we explain below, regardless of whether Daker was indigent at the time of his motion for new trial proceeding and direct appeal, the habeas court specifically and correctly concluded based on the record that Daker did not validly waive his right to appellate counsel. Accordingly, we affirm the habeas court's order to the extent that it is consistent with that conclusion, and we reverse the order to the extent that it summarily and inconsistently says that Daker's right-to-counsel claim is meritless or needs to be remanded to the trial court and purports to deny the habeas petition as a whole. We remand the case to the habeas court with direction to grant relief to Daker in the form of a second, out-of-time direct appeal so that he may start the post-conviction process anew in the trial court, either with the assistance of counsel — appointed counsel if Daker has been determined by the circuit public defender's office to be indigent at that time, or retained counsel if Daker has been determined not to be indigent — or pro se if the trial court first determines that Daker has validly waived his right to appellate counsel.

1. *Background.*

The record shows the following.[1]

(a) *The pretrial proceedings.* On January 15, 2010, Daker was arrested on charges related to the murder of Karmen Smith in Cobb County in 1995. In a notice dated January 19, 2010, the Cobb County Circuit Defender's Office ("CDO") informed Daker that it had determined, after an interview of him and an investigation of the information recorded on his application for the appointment of an attorney, that he did not qualify for appointed counsel because his "income exceed[ed] the guidelines for a court appointed attorney."[2]

---

[1] As the habeas court noted in its order, the record in this case is voluminous and complicated. The order describes the procedural history of the case to some extent, although that account includes a few inaccuracies and several immaterial date discrepancies, most of which appear to be due to the habeas court's reference to the signing rather than the filing date for various trial court orders. At the hearing on the habeas petition, the criminal case record from the trial court and other documents were admitted into evidence, but only the prosecutor from Daker's trial testified; the testimony included nothing relevant to the claims raised here beyond what is in the trial court record, and the habeas court made no specific reference to this testimony in its order. We provide a more detailed description of pertinent parts of the record as context for the discussion of the legal issues below.

[2] OCGA § 17-12-2 (6) (C) defines "indigent person" in pertinent part as:
    A person charged with a felony who earns . . . less than 150 percent of the federal poverty guidelines unless there is evidence that the person has other resources that might reasonably be used

5

On January 28, private attorney Brian Steel filed an appearance to represent Daker. On April 1, a Cobb County grand jury indicted Daker for malice murder, four counts of felony murder, two counts of burglary, false imprisonment, and aggravated assault related to Karmen Smith's death, as well as aggravated battery of Nick Smith and attempted aggravated stalking of Loretta Spencer Blatz. On April 27, the trial court entered a consent order allowing Steel to withdraw due to a "disagreement [with Daker] on how to proceed on this case."

At a hearing on May 4, 2010, the trial court asked the CDO to appoint an attorney for Daker until he decided whether he wanted to hire new private counsel; Michael Syrop, a CDO public defender, then represented Daker at the hearing. On May 12, Syrop moved to withdraw at Daker's request. On June 9, the CDO filed an "Affidavit of Indigency," which said that "[u]pon consideration of the

to employ a lawyer without undue hardship on the person[ or] his or her dependents . . . . In no case shall a person whose maximum income level exceeds 150 percent of the federal poverty level . . . be an indigent person or indigent defendant.

6

Application for Appointment of Counsel, [Daker] is found to be indigent" and that on May 28, Syrop had been appointed to represent Daker.

On July 19, 2010, the trial court held a hearing on Syrop's motion to withdraw, at which Daker asked to represent himself and requested additional time to prepare his argument for why he should be permitted to proceed without counsel. The court granted the continuance with the understanding that Syrop would assist Daker to prepare his argument. At a hearing on August 9, Syrop formally moved to allow Daker to represent himself. The court granted the motion after explaining to Daker in detail the consequences of his self-representation and finding that he was aware of his rights and the consequences of proceeding without an attorney at trial; the post-conviction process was not mentioned during the court's colloquy with Daker. Daker then represented himself for the remainder of the hearing. During the hearing, the court also informed Syrop that it intended to enter an order allowing him to withdraw as counsel and appointing him to serve as standby

7

counsel; on August 17, the court filed that order.

In a notice dated September 23, 2010, the CDO informed Daker that it had determined, after an interview of him and an investigation of the information recorded on his application for the appointment of an attorney, that he was ineligible for appointed counsel because his "income exceed[ed] the guidelines." On November 15, Daker filed a motion for an interview with the Circuit Defender (along with a motion to proceed in forma pauperis and motion for replacement of standby counsel). Daker claimed that the CDO filed its September 23 notice declaring him not indigent — after previously filing the affidavit of indigency on his behalf on June 9 — because Daker and Syrop had requested funds from the CDO for certified copies of records, and that the determination was based on the outdated January 2010 interview following his arrest. In an order filed March 25, 2011, the trial court summarily denied all three motions and released Syrop from the case. In the same order, however, the trial court directed the CDO to investigate Daker's financial status again. On April 4, the CDO filed a notice saying

8

that, after an interview of Daker and an investigation of the information recorded on his application for the appointment of an attorney, the CDO found him not indigent because he had "other financial resources available."

On December 5, 2011, however, the CDO filed an "Affidavit of Indigency," which said that "[u]pon consideration of the Application for Appointment of Counsel, [Daker] is found to be indigent," and that on November 28, 2011, Michael Treadaway had been appointed to represent him. On December 9, 2011, the trial court filed an order captioned "Redetermination of Indigency" and signed by both a judge (apparently not the judge who generally presided over Daker's case) and a CDO representative, which said that Daker had previously been "determined to be indigent" on May 28, 2010, and that "[a] conflict has occurred and [Daker] will be appointed another circuit defender"; the order then said that "it is the finding of this court that Michael Syrop be relieved of representation and Michael Treadaway . . . be appointed [as] counsel for [Daker]." On February 2, 2012, Jason Treadaway (who is the son of Michael Treadaway)

9

also entered an appearance as standby counsel for Daker.

On February 14, 2012, however, the CDO filed a notarized statement signed by the Circuit Defender, which said the following:

> The defendant, WASEEM ANAS DAKER, was denied a court appointed attorney on or about March 16, 2011 after an investigation into his financial resources. At that time the investigation revealed that Mr. Daker would not qualify for court-appointed counsel. As a result of the seriousness of the charges against Mr. Daker, it was subsequently determined that Mr. Daker might need the assistance of stand-by counsel. On November 29, 2011, Michael Treadaway was appointed as stand-by counsel for Mr. Daker.
>
> In error, the Affidavit of Indigency generated by the Circuit Defender's Office indicated that there was a finding that Mr. Daker was indigent. There was no such finding. As a matter of fact, the opposite is true. There was a determination by the Cobb County Circuit Defender's Office that Mr. Daker was not indigent.

Daker's trial was set to begin on February 20, 2012. On February 17, however, at the end of a motions hearing presided over by a senior judge, Jason Treadaway informed the court that Daker had just told him that Daker was "turning the case over to the lawyers." Treadaway said that they were not ready and were going to have Daker evaluated for mental competency because he had

10

"now turned it over to the lawyers formally"; the court replied, "Okay."

On the day set for trial, February 20, the Treadaways moved for a continuance, which the trial court initially denied, saying that "it seems . . . that much of Mr. Daker's self-made defense has been to delay and obfuscate and appeal . . . everything." The Treadaways then moved to withdraw as counsel based on Rule 1.1 of the Georgia Rules of Professional Conduct, which requires that counsel not proceed in a matter when counsel is not prepared; the court denied that motion. After a recess and conference with counsel for both parties, however, the court reconsidered its ruling and granted a continuance for the Treadaways to prepare for trial. The court then proceeded to allow defense counsel to "make a firm record" about whether Daker was represented by counsel or self-represented. Daker was called to testify and had the following exchange with Michael Treadaway:

> Q: And you are freely and voluntarily stating to the [c]ourt at this time that you want to give up [the right to represent yourself] throughout this proceeding and you

11

want to be represented by attorneys throughout this proceeding, including, if necessary, following a trial if an appeal is necessary; is that correct?

A: That's correct.

Q: And at this time you are represented by court-appointed attorneys Mike Treadaway and Jason Treadaway; is that correct?

A: Yes.

Q: You are satisfied with our representation of you at this point?

A: Yes, sir.

On August 31, however, Daker filed a motion for replacement of counsel.

(b) *The trial and sentencing hearing.* On September 10, 2012, Daker's trial began, and the trial court denied his motion to replace his counsel. The next day, at the end of jury selection but before the jury was sworn in, Daker asked to represent himself again. The trial court mentioned that Daker could hire an attorney as he had done with Brian Steel. But the court then noted that Daker had made a "binding" agreement to be represented by the Treadaways in order to receive a continuance, so the court initially denied the request. The next morning, however, at the prosecutor's suggestion, the court

12

reconsidered Daker's request and conducted a *Faretta* hearing.[3] The court read aloud a portion of the transcript from the February 20 motions hearing, including the first question and answer quoted above, and said that Daker "agreed to be represented throughout the entirety of the trial." The court then confirmed with Daker that he was unequivocally, knowingly, intelligently, and voluntarily giving up his right to counsel for "the entirety of these proceedings" and found that he was mentally competent to handle his legal affairs; the court also explained to Daker in detail the consequences of his self-representation at trial and confirmed that he understood them. The court concluded that Daker could represent himself and appointed Jason Treadaway to serve as standby counsel (although the court directed Treadaway to sit in the gallery rather than at counsel table with Daker). The post-conviction process was not separately discussed during the court's colloquy with Daker. On September 28, the jury found Daker guilty of all charges.

---

[3] See *Faretta v. California*, 422 U.S. 806, 835-836 (95 SCt 2525, 45 LE2d 562) (1975).

Three days later, on October 1, 2012, the trial court sentenced Daker to serve life in prison plus 47½ years. Near the end of the sentencing hearing, the court advised Daker of his right to appeal and to file a habeas petition. The court also noted that "the circuit defender is of the opinion [that Daker has] resources to pay for counsel," and that it was "directing the circuit defender to take whatever steps necessary to proceed against [Daker] for the attorney's fees that the taxpayers of Cobb County and the State of Georgia have expended on [his] behalf that [he has] grossly abused."[4]

Daker filed a pro se motion for new trial that same day, which he later amended multiple times. The same day, Jason Treadaway also filed a motion for new trial on Daker's behalf, signing the motion as standby counsel. There is no indication that Daker had standby counsel after this point.

---

[4] Cf. OCGA §§ 17-12-51 (a) (authorizing trial courts to impose, as a condition of probation, repayment of costs for providing legal representation and other defense expenses paid for by a municipality, a county, or the state, if the payment does not impose a hardship upon the defendant); 17-12-52 (a) (authorizing a county or municipality to recover payment or reimbursement if legal assistance was paid for by the county or municipality and the person was not eligible to receive it or has been ordered to pay under OCGA § 17-12-51 and has not done so).

(c) *The motion for new trial proceeding.* On October 11, 2012, Daker filed a motion for appointment of "appellate counsel to represent him on any motion for new trial and on appeal." On the same day, Daker filed a motion "to proceed in forma pauperis . . . for a copy of the trial transcript, on any motion for new trial, and on appeal." On October 31, the trial court denied the motion for appointment of appellate counsel, ruling that Daker "did not qualify for appointed counsel" based on the March 16, 2011 interview with the CDO and that nothing in the record showed that his financial circumstances had changed since that date, as he "ha[d] been incarcerated since that time and his basic needs ha[d] been provided for by the Cobb County Jail." On November 5, 2012, the trial court denied Daker's motion to proceed in forma pauperis, ruling that Daker "was not found to be indigent" for the same reasons. On March 7, 2013, Daker filed a motion for appointment of standby counsel "to assist him in preparing for, and presenting his motion for new trial, and if necessary, direct appeal from his conviction." On June 4, the trial court denied the motion, again ruling that based on

15

the March 16, 2011 interview with the CDO, Daker "did not qualify for appointed counsel" and that "his basic needs ha[d] been provided for by the Cobb County Jail and the Georgia Department of Corrections."

Accordingly, Daker represented himself during the first portion of his motion for new trial hearing, which occurred on August 8 and 9, 2013. The second portion of the hearing occurred on October 7 and 8, 2013. At the outset of the October 7 proceeding, Daker informed the trial court that he had attempted to retain private attorney Rodney Zell as pro bono counsel for the second portion of the hearing, but Zell had a schedule conflict with a murder trial and would represent Daker only if the hearing was continued to give Zell time to prepare. The court orally denied the requested continuance, noting that the hearing had been scheduled for some time, Zell had not entered an appearance, and it was the second time that Daker had decided to get a lawyer "midstream" and seek a

continuance for that reason.[5] Zell never filed an appearance in the trial court, and Daker continued to represent himself.

On October 18, 2013, Daker filed a motion for a new determination of indigency, asking the trial court to order the CDO to make a new inquiry as to his indigency status for post-conviction motions and appeal. On October 30, the court entered an order denying the motion as untimely and describing the motion as "particularly frivolous" given Daker's "history of gamesmanship regarding matters of counsel and self-representation." The court added:

> [Daker] has hired and been appointed counsel in the past and, conveniently, fired counsel or asked for standby counsel for representation at his own convenience to obtain continuances. There is every indication that these last minute requests for appointment of counsel are part of the same strategy.

The order also noted that "a fair reading of the letters between [Daker] and Lottie Spencer Blatz would indicate he has private

---

[5] The trial court was apparently referring to the Treadaways' request for a continuance of Daker's trial on February 20, 2012, the day that it was initially scheduled to begin.

17

resources by which to obtain counsel were counsel willing to take his case" and that Daker had been incarcerated "since he was determined not indigent" so "all his basic needs have been met" and his "financial circumstances have no reason to have changed" since the CDO interviewed him in March 2011. The court therefore declined to "exercise its discretion to redetermine or appoint counsel."

On the same day, the trial court also denied Daker's motion for new trial. On November 26, 2013, Daker, still representing himself, filed a timely notice of appeal to this Court.

(d) *The initial direct appeal, remand, and subsequent appeal.* On October 28, 2014, Daker filed another motion in the trial court asking to proceed in forma pauperis on appeal. On October 31, his appeal was docketed in this Court, but on January 29, 2015, we struck the appeal from the docket and remanded the case to the trial court for the limited purpose of holding an evidentiary hearing and ruling on Daker's motion to disqualify the Cobb County District Attorney and his office from representing the State on appeal. In an

18

order entered on April 17, 2015, the trial court denied Daker's "motion for a new determination of indigency" (presumably referring to his October 2014 motion to proceed in forma pauperis on appeal), explaining that "the [c]ourt and the [CDO] have repeatedly found that [he] is not indigent." On June 30, Daker filed a "motion for writ of mandamus" in his criminal case seeking to compel the Circuit Defender to evaluate his indigency status and appoint appellate counsel. On August 26, the trial court entered an order denying Daker's motion to disqualify the Cobb County District Attorney's Office. On September 16, the trial court summarily denied Daker's mandamus "motion."

Daker, still pro se, filed numerous notices of appeal to this Court. On April 27, 2016, we docketed 34 cases relating to Daker's appeals. On May 23, we dismissed all but three of those cases as duplicative or for failure to follow proper interlocutory or discretionary appeal procedures, and on June 6, we entered an order consolidating the three remaining cases for review. In *Daker v. State*, 300 Ga. 74 (792 SE2d 382) (2016), we rejected Daker's claims

19

of error and affirmed his convictions.[6] Daker did not enumerate as error any alleged violation of his right to counsel for his motion for new trial proceeding and direct appeal.

(e) *The habeas petition and hearing.* On January 20, 2017, Daker, still representing himself, filed the habeas corpus petition now at issue before this Court, challenging his Cobb County convictions and raising 438 grounds for relief. The habeas court held an evidentiary hearing on December 20, 2017, and on August 22, 2018, the court denied relief in a 76-page final order, which for most of Daker's grounds merely recited his basic allegations and then summarily ruled that the claim was "without merit," adding for some grounds that they were also barred by res judicata or by

[6] The notices of appeal in the three cases challenged trial court orders denying Daker's eighteenth motion to recuse, granting the State's motion to complete the record for the prior appeal, and denying Daker's motion to disqualify the Cobb County District Attorney's Office. In Daker's brief for these appeals, he enumerated ten errors, none of which directly related to those three trial court orders and none of which challenged his convictions or the denial of his motion for new trial. See *Daker*, 300 Ga. at 74-75. We also explained that because Daker had requested that all transcripts and supporting evidence be omitted from the record for appeal, we were unable to evaluate whether the evidence presented at his trial was legally sufficient to support his convictions. See id.

procedural default.

Daker filed a timely pro se notice of appeal. Rodney Zell then began representing Daker and filed a timely application in this Court for a certificate of probable cause to appeal.[7] In the application, Daker specifically claimed only that the trial court erroneously denied his state and federal constitutional right to appellate counsel, despite his repeated requests for counsel, and that his requests for a determination of his indigency status for purposes of having counsel appointed were improperly delegated to and erroneously denied by the CDO.

On November 18, 2019, this Court issued an order granting Daker's application, vacating the habeas court's order with regard to the claims Daker had raised regarding the denial of his right to appellate counsel and the determination of his indigency status, and remanding the case with direction to the habeas court to identify which of Daker's 438 grounds specifically implicate those claims,

---

[7] It appears that Zell is representing Daker pro bono, although that does not appear to be stated in the record.

21

consider those grounds based on the evidence already presented, and then issue thorough findings of fact and conclusions of law as to those grounds as required by OCGA § 9-14-49,[8] after which either party, if unsatisfied, could appeal. See Case No. S19H0355.

(f) *The habeas court's order on remand.* On April 29, 2020, the habeas court entered a new final order. The new order incorporated verbatim from the court's original order the findings of facts and conclusions of law on Daker's 438 grounds, including those implicating the issues of whether Daker was denied his right to appellate counsel and whether the determination of his indigency status was improperly delegated to and denied by the CDO — all of which the court summarily concluded were "without merit."[9] The order then included new sections discussing these two claims and

---

[8] OCGA § 9-14-49 says in pertinent part, "After reviewing the pleadings and evidence offered at the trial of the case, the judge of the superior court hearing the case shall make written findings of fact and conclusions of law upon which the judgment is based."

[9] The habeas court identified grounds 252, 367 through 370, 437, and 438 as implicating the issue of whether Daker was denied his right to appellate counsel, and identified grounds 36, 69, 76, 247, and 253 as implicating the issue of whether the determination of Daker's indigency status was improperly delegated to and denied by the CDO.

22

reaching conclusions based on legal analysis and specific findings from the record that contradict the restated rulings that those grounds were meritless.

(i) *Denial of the right to appellate counsel.* In the section of the order addressing this claim, the habeas court first referenced its prior rulings on the seven grounds related to this claim. The court then recited applicable law, explaining that for a defendant to properly waive his Sixth Amendment right to counsel and represent himself, "[t]he record must reflect a finding on the part of the trial court[ ] that the defendant has validly chosen to proceed pro se" and that "this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel," citing *McDaniel v. State*, 327 Ga. App. 673, 674 (761 SE2d 82) (2014).

The habeas court said that the record in this case shows that the trial court permitted Daker to represent himself during his trial after the trial court explained the dangers and consequences of self-representation in a jury trial on multiple occasions and Daker indicated that he fully understood. The habeas court also pointed

out that Daker "had four separate attorneys appointed as counsel or standby counsel before and during his trial but repeatedly asked the [trial] court to remove each attorney due to complaints or disagreements," which was permitted without him showing good cause for removing counsel.[10] The habeas court recognized that "[a] valid waiver [of the right to counsel] can also exist when an uncooperative defendant repeatedly requests a different attorney and is warned that he must utilize the appointed attorney or proceed pro se if he can not hire his own attorney," citing *Jones v. Walker*, 540 F3d 1277, 1289 (11th Cir. 2008).

The habeas court found that the "record contains a valid waiver of *trial counsel*," but "there is no waiver of counsel on appeal." (Emphasis in original.) The court then said that "[i]t can be argued that [Daker]'s previous conduct in not accepting appointed counsel and wanting appointed attorneys removed also applied to his appeal," but "in an abundance of caution, the [c]ourt finds that the

_____

[10] The first of those attorneys, Brian Steel, was actually retained rather than appointed.

24

record does not contain a waiver of counsel *as to appellate counsel* explicitly." (Emphasis in original.)

The habeas court explained that Daker's right to appellate counsel "was addressed by the trial court only through a statement [at the close of sentencing] that he was not indigent," and that Daker "did not have retained counsel that would have been expected to carry out his appeal," citing *Brown v. State*, 301 Ga. 728, 728-729 (804 SE2d 16) (2017). The habeas court further noted that Daker filed a motion to proceed in forma pauperis on appeal, but the trial court "relied on a previous determination of indigency from over a year earlier." The habeas court concluded that "[t]he record does not show that [Daker] voluntarily waived the right to counsel on appeal as required," citing *United States v. Hammonds*, 782 Fed. Appx. 899, 900-901 (11th Cir. 2019), and that "[a]lthough the record in this case is voluminous and difficult to decipher, th[e] [c]ourt does not find a clear waiver of appellate counsel." Perplexingly, given these findings and conclusions, the habeas court ended its analysis by saying: "Therefore, this [c]ourt must remand the case to the trial court to

25

determine if [Daker] was entitled to appellate counsel."

(ii) *Determination of indigency status.* In the section of the order addressing this claim, the habeas court again started by referencing its prior rulings on the five grounds related to this claim. The court then recited some applicable legal principles. The court noted that defendants in criminal cases have the Sixth Amendment right to be represented by counsel, although trial courts must appoint counsel only for indigent defendants, citing *Hawkins v. State*, 222 Ga. App. 461, 462 (474 SE2d 666) (1996). The habeas court recognized that the circuit public defender is responsible for determining who meets the definition of "indigent," citing *Roberson v. State*, 300 Ga. 632, 634 (797 SE2d 104) (2017). Citing *Massey v. State*, 278 Ga. App. 303, 306 (628 SE2d 706) (2006), the court said that the focus in deciding

> whether a defendant who previously retained counsel at trial or after is indigent and entitled to have counsel appointed on appeal is not upon the current state of the defendant's legal representation or how that representation was funded, but upon the defendant's constitutional right to legal representation,

26

and if a defendant makes a claim of indigence to a trial court, the court has a duty to inquire into the claim and make a determination about its legitimacy.

The habeas court said that "[t]he record is disordered in this case, but regardless, the trial court relied on a March 16, 2011[ ] [CDO] interview finding that [Daker] was not indigent," even though Daker's jury trial took place in September 2012. The habeas court also said that although Daker had nearly retained counsel for his motion for new trial, he was thereafter pro se, which took the court's analysis back to whether Daker should have had appellate counsel appointed. The court once again ended its analysis by saying: "Therefore, this [c]ourt must remand the case to the trial court to determine if [Daker] was entitled to appellate counsel."

In a final section of the order labeled "CONCLUSION," the habeas court said:

> Having fully considered all of Petitioner's claims, the [c]ourt finds that this case must be **REMANDED** to the trial court to determine if Petitioner was entitled to appellate counsel. Petitioner's remaining grounds are without merit and hereby **DENIED**. IT IS HEREBY

27

ORDERED that Petitioner's Application for Writ of Habeas Corpus be **DENIED**.

(Emphasis in original.) The first and third sentences of this conclusion appear to be inconsistent.

The Warden filed a timely notice of appeal from the habeas court's order, and Daker filed a timely notice of cross-appeal.

2. *Daker's right-to-appellate-counsel claim.*

In this Court, Daker contends that he was denied his constitutional right to counsel for the direct appeal of his criminal convictions, specifically arguing that he did not waive his right to appellate counsel and that the determination of his indigency status for appointment of counsel was improperly delegated to and erroneously denied by the Cobb County Circuit Defender's Office. We conclude that Daker's right to appellate counsel was violated regardless of whether he was indigent.

Whether or not Daker was indigent at the time he was convicted and sentenced, he had a right to counsel for his motion for new trial proceeding and his first appeal of right. See *Hall v.*

*Jackson*, 310 Ga. 714, 720 (854 SE2d 539) (2021) ("A criminal defendant in Georgia is constitutionally entitled to the effective assistance of counsel during his trial, motion for new trial proceeding, and direct appeal."). See also *Evitts v. Lucey*, 469 U.S. 387, 393-397 (105 SCt 830, 83 LE2d 821) (1985) ("[T]he services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits."). As discussed in greater detail below, a defendant may validly elect to represent himself during post-conviction proceedings by waiving his right to counsel either expressly, see *Merriweather v. Chatman*, 285 Ga. 765, 766 (684 SE2d 237) (2009), or functionally, see *Bryant v. State*, 268 Ga. 616, 617-618 (491 SE2d 320) (1997); *Calmes v. State*, 312 Ga. App. 769, 773 (719 SE2d 516) (2011). See also *Iowa v. Tovar*, 541 U.S. 77, 87-88 (124 SCt 1379, 158 LE2d 209) (2004) ("While the Constitution 'does not force a lawyer upon a defendant,' it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent." (citation omitted)). A non-indigent defendant may functionally waive the right to counsel by failing to

29

retain counsel with reasonable diligence, see *Hatcher v. State*, 320 Ga. App. 366, 371-373 (739 SE2d 805) (2013), and regardless of indigency, a defendant may functionally waive the right to counsel by engaging in dilatory tactics, see *Bryant*, 268 Ga. at 617; *Calmes*, 312 Ga. App. at 773.

Although Daker expressly waived his right to counsel for trial, the record does not show that he ever expressly or functionally waived his right to appellate counsel. To the contrary, the record shows that after he was convicted, Daker repeatedly requested counsel to assist him in his motion for new trial proceeding and direct appeal.

(a) *Express waiver*. In most cases, before a defendant may properly proceed pro se in initial post-conviction proceedings and on direct appeal, he must be advised of the dangers of such self-representation and knowingly, intelligently, and voluntarily waive his right to appellate counsel on the record. See *Merriweather*, 285 Ga. at 766. "In the absence of a showing in the record that the trial court made such admonitions, the defendant has not validly waived

his right to appellate counsel." Id.[11]

In this case, as the habeas court found, "the trial court record

---

[11] This Court has not endorsed a specific colloquy that trial courts should use when advising defendants of the dangers of self-representation in post-conviction proceedings, and we will not do so today, particularly because Daker's claim indicates that he will not seek to waive his right to appellate counsel when this case returns to the trial court. See *Merriweather*, 285 Ga. at 767 n.2 ("We decline appellant's request to adopt a specific colloquy for trial courts to follow when admonishing defendants on the dangers of self-representation at trial or on appeal."). See also *Hammonds*, 782 Fed. Appx. at 903 & n.3 (noting that neither the Eleventh Circuit nor any other federal court of appeals (outside the context of collateral review) has ever "delineated what is constitutionally required for knowing, voluntary, and intelligent waiver of *appellate* counsel" (emphasis in original)). We also note that the United States Supreme Court has held that there is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88 (explaining that what a defendant must be advised of regarding the right to counsel before a guilty plea may be less than for a defendant waiving counsel for a trial).

Contrary to this position, the Court of Appeals indicated in *Weber v. State*, 203 Ga. App. 356 (416 SE2d 868) (1992), that before a waiver of appellate counsel would be valid,

> the record should reflect a defendant's appreciation of the charges for which he has been convicted and possible avenues of post-judgment relief. A defendant should also be aware that post-judgment practice involves strict compliance with rules of practice and procedure; that failure to comply with these rules may result in waiver of important issues and that pro se parties are generally bound by the same rules of practice and procedure as a lawyer.

Id. at 357 (citations and punctuation omitted). Although discussion of these topics could certainly support the finding of a valid waiver of appellate counsel, whether such a finding could be made in the absence of them would depend on the overall circumstances of the particular case. We therefore disapprove of *Weber* to the extent it can be read to establish a required colloquy for the waiver of the right to appellate counsel.

contains a valid waiver of *trial counsel.*" (Emphasis in original.) Following jury selection, after Daker asked to represent himself again, the trial court conducted a *Faretta* hearing, during which it explained to Daker in detail the consequences of his self-representation at trial and found that he was aware of his rights and the consequences of proceeding without an attorney. But the record contains no similar discussion with Daker of the risks of self-representation with regard to post-conviction proceedings and appeal and no indication that he wished to waive his right to appellate counsel.[12] To the contrary, after he was convicted, Daker repeatedly requested the appointment of appellate counsel and later tried to enlist Rodney Zell as pro bono counsel for part of his motion for new trial proceeding, so the trial court was clearly on notice that Daker did *not* wish to exercise his right to represent himself during

---

[12] The only mention of an "appeal" in the discussions of Daker's representation before and during trial was in his exchange with Michael Treadaway on February 20, 2012, which the trial court repeated in its colloquy with Daker on September 10, 2012. In that exchange, Daker testified that he wanted to "give up [the right to represent himself] throughout this proceeding and . . . want[ed] to be represented by attorneys throughout this proceeding, including, if necessary, following a trial if an appeal is necessary."

his post-conviction proceedings. In sum, the record demonstrates that Daker did not receive warnings regarding the dangers of self-representation on appeal and did not expressly waive his right to appellate counsel.

(b) *Functional waiver.*

(i) *Waiver by a non-indigent defendant's failure to retain counsel.* One type of functional waiver occurs when a defendant who is not entitled to appointed counsel fails to act diligently to secure counsel.

> [W]here a non-indigent defendant has not invoked his right to represent himself at trial, but has also failed to hire an attorney to represent him, . . . the determination of whether he validly waived his right to counsel does not turn upon whether he knowingly and intelligently chose to proceed pro se. Instead, a finding of waiver depends on whether the non-indigent defendant exercised reasonable diligence in securing representation.

*Porter v. State,* 358 Ga. App. 442, 447-448 (855 SE2d 657) (2021) (citation and punctuation omitted). For this type of waiver of the right to counsel, the trial court is not required to give "a warning of the dangers of proceeding pro se[,] because such requirement applies 'only in the context of a waiver of the right to counsel by election of

the countervailing right of self-representation.'" *Hatcher*, 320 Ga. App. at 372-373 (citation, footnote, and emphasis omitted). See also *Burnett v. State*, 182 Ga. App. 539, 542-543 (356 SE2d 231) (1987).

> Instead,
>
> when presented with a non-indigent defendant who has appeared for trial without retained counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control.

*Porter*, 358 Ga. App. at 448 (citation, punctuation, and emphasis omitted). See also *Shaw v. State*, 251 Ga. 109, 112 (303 SE2d 448) (1983). A functional waiver of this sort is not presumed simply because a non-indigent defendant lacks counsel. It is incumbent on the trial court to determine on the record whether the defendant has exercised reasonable diligence in attempting to retain counsel and whether the absence of counsel is attributable to reasons beyond the defendant's control. See *Porter*, 358 Ga. App. at 450-451; *Martin v. State*, 240 Ga. App. 246, 249-250 (523 SE2d 84) (1999).

After Daker was convicted and sentenced, the trial court never

34

inquired about his efforts to retain counsel and never admonished him to do so, even as he repeatedly expressed his desire for appellate counsel and even as the court repeatedly rejected his requests to have counsel appointed to represent him. At the outset of the second portion of the motion for new trial hearing, Daker informed the trial court that he had attempted to retain Zell as pro bono counsel, but that Zell had a scheduling conflict due to a murder trial and would represent Daker only if the hearing was continued to give Zell time to prepare. The court orally denied the continuance, noting that the hearing had been scheduled for some time, that Zell had not entered an appearance, and that it was the second time Daker had decided to get a lawyer "midstream" and seek a continuance for that reason (although the other time was before trial about 18 months earlier).

Before requiring Daker to represent himself during the motion for new trial proceeding and on direct appeal, and even in the discussion of Zell's possible appearance, the trial court did not conduct an inquiry or make findings on the record regarding the efforts Daker had made to retain appellate counsel or whether his

lack of counsel was due to reasons beyond his control. Thus, the trial court never made the findings required to properly conclude that Daker functionally waived his right to appellate counsel. See *Porter*, 358 Ga. App. at 452 (holding that "the trial court failed to properly evaluate whether Porter acted with reasonable diligence in obtaining counsel and whether the absence of counsel was attributable to reasons beyond Porter's control," so a new trial was required); *Martin*, 240 Ga. App. at 251 (holding that a new trial was required when "the trial court failed to exercise its affirmative duty of considering Martin's individual circumstances and determining on the record whether Martin exercised reasonable diligence in attempting to retain trial counsel"). Compare *Hatcher*, 320 Ga. App. at 371-372 (concluding that the trial court did not abuse its discretion when it required that a defendant represent himself at trial after he functionally waived his right to counsel by failing to exercise diligence to retain counsel despite repeated admonitions to do so by the trial court over a three-month period).

(ii) *Functional waiver by engaging in dilatory tactics.* A second

type of functional waiver occurs when a trial court concludes that a defendant (whether indigent or not) is attempting to use the discharge and employment of counsel as a dilatory tactic and declines to continue a proceeding until the defendant obtains new counsel. See *Bryant*, 268 Ga. at 617; *Hobson v. State*, 266 Ga. 638, 638 (469 SE2d 188) (1996). See also *Jefferson v. State*, 209 Ga. App. 859, 861 (434 SE2d 814) (1993) (explaining that if a defendant does not have good reason for discharging his counsel, a trial court does not err by requiring him to choose between continued representation by that attorney and proceeding pro se). Before a trial court requires a defendant to proceed pro se under this waiver theory, the court should advise the defendant of the dangers of self-representation. See *Hobson*, 266 Ga. at 638.

Near the end of the sentencing hearing, the trial court advised Daker of his right to appeal and to file a habeas petition and noted that "the circuit defender is of the opinion [that Daker has] resources to pay for counsel." Daker then did not have counsel in any capacity during the motion for new trial proceeding or his direct appeal. On

37

October 30, 2013, the court issued an order denying Daker's motion for a new determination of indigency for post-conviction motions and appeal. In that order, the trial court stated that Daker's motion was "particularly frivolous" given his "history of gamesmanship regarding matters of counsel and self-representation" and that he "has hired and been appointed counsel in the past and, conveniently, fired counsel or asked for standby counsel for representation at his own convenience to obtain continuances." The court added that "[t]here is every indication that these last minute requests for appointment of counsel are part of the same strategy." The court also discussed its reasons for believing that Daker was not indigent and "decline[d] to exercise its discretion to redetermine or appoint counsel."

Repeatedly obtaining and discharging counsel can be dilatory conduct that authorizes a trial court to conclude that a defendant had made the functional equivalent of a knowing and voluntary waiver of counsel and therefore decline to continue a proceeding. But the October 30, 2013 order was entered on the same day that the

court entered the order denying Daker's motion for new trial, over a year after that post-conviction proceeding began. The trial court did not cite any functional waiver cases or make a finding regarding a functional waiver of the right to appellate counsel. And all of the conduct that the court appeared to reference regarding counsel and self-representation occurred before or during Daker's trial rather than during the post-conviction process, when Daker never had counsel. At no time during the post-conviction proceedings did the trial court advise Daker of the dangers of representing himself at that distinct stage, ask him to choose between representing himself or retaining counsel, or give him a deadline by which to obtain counsel. Compare *Lewis v. State*, 330 Ga. App. 650, 651 (768 SE2d 821) (2015) (holding that the trial court was authorized to conclude that the defendant was attempting to use the discharge of counsel as a dilatory tactic, and thus had waived his right to counsel, when he attempted to discharge counsel and sought a continuance on the first day of trial, insisting that he did not want the court-appointed attorney to represent him despite the trial court's warnings about

39

the dangers of proceeding without counsel); *Jefferson*, 209 Ga. App. at 860-861 (holding that the defendant's conduct amounted to a waiver of counsel where he "appeared with counsel and was informed that he was not entitled to appointment of counsel of his own choosing, yet he chose to refuse the services of his trial counsel"). Thus, the record does not demonstrate this sort of functional equivalent of a waiver of appellate counsel by Daker.

For these reasons, the habeas court correctly found that the record does not include a clear waiver of appellate counsel and properly concluded that the record does not show that Daker voluntarily waived his right to counsel on appeal.

3. *Daker's indigency-determination claim.*

Daker also argues that his requests for a determination of his indigency status for the purpose of appointing counsel to represent him were improperly delegated to and erroneously denied by the Circuit Defender's Office, and that instead the trial court should have made the determination. Daker has it backward under current Georgia law. The Indigent Defense Act of 2003 ("IDA"), OCGA § 17-

40

12-1 et seq., expressly assigns to the circuit public defenders (and other indigent defense providers), rather than to the trial courts, the authority and responsibility to determine if criminal defendants are indigent and therefore entitled to appointed counsel at the government's expense. See OCGA § 17-12-24 (a) ("The circuit public defender[ or] any other person or entity providing indigent defense services . . . shall determine if a person or juvenile arrested, detained, or charged in any manner is an indigent person entitled to representation under [the IDA]."); *Roberson*, 300 Ga. at 634.[13]

The CDO's last determination of Daker's indigency status was the February 14, 2012 statement, signed personally by Cobb

---

[13] In support of his argument about who should determine indigency for purposes of representation, Daker relies entirely on pre-IDA cases. See, e.g., *Ford v. State*, 254 Ga. App. 413, 414 (563 SE2d 170) (2002) ("While it is not error to have the public defender interview applicants for appointment of counsel, it is the trial court's responsibility to make a determination of indigence based upon evidence and to establish a record of such finding.").

We note that trial courts retain the authority under OCGA § 9-15-2 to decide if criminal defendants are indigent for the purpose of paying the costs of an appeal. See *Roberson*, 300 Ga. at 634-635. Daker does not challenge the trial court's rulings on his motions to proceed in forma pauperis to obtain transcripts and avoid costs, and the merits of those findings are not reviewable. See id. at 635.

County's circuit public defender, saying that Daker was not indigent based on a March 16, 2011 interview. That determination remained in effect notwithstanding the Treadaways' service as Daker's trial counsel after the February 17, 2012 motions hearing and Jason Treadaway's service as court-appointed standby counsel from the third day of the trial through the sentencing hearing, and despite the trial court's own findings regarding Daker's indigency status in post-trial orders denying his motions for appointed appellate counsel.

If Daker believed that his indigency status had changed with respect to his right to appointed counsel, his remedy was to seek a re-determination from the CDO, by mandamus if necessary. See *Calmes*, 312 Ga. App. at 774 (explaining that when a defendant asserts that a circuit public defender has failed to fulfill the duties prescribed by the IDA, the defendant may seek relief by application for a writ of mandamus); *Bynum v. State*, 289 Ga. App. 636, 637-638 (658 SE2d 196) (2008) (same). The record shows that after the February 2012 CDO statement, Daker filed several motions seeking

a re-determination of his indigency status for appointed counsel, which the trial court denied. Daker later tried to seek mandamus on June 30, 2015, but he did so improperly as a motion in his criminal case rather than as a freestanding mandamus action. See *Henderson v. State*, 303 Ga. 241, 244 (811 SE2d 388) (2018).

If the CDO declines to re-determine Daker's indigency status when this case returns to the trial court — which will be more than nine years since the last CDO determination — Daker might file a mandamus action at that time. Cf. *Hill v. State*, 285 Ga. App. 310, 312 (645 SE2d 758) (2007) (pre-IDA case involving the right to appointed counsel for appeal, focusing on "'whether appellant was *at the time of his conviction* an indigent person who could qualify for appointed counsel'" (quoting *Bell v. Hopper*, 237 Ga. 810, 811 (299 SE2d 658) (1976)) (emphasis added)). As this case currently stands, however, Daker is not indigent for the purpose of appointing him appellate counsel at the government's expense.

4. *Conclusion.*

After analyzing the law and the record regarding Daker's right-

to-counsel claim, the habeas court correctly found that the "trial court record contains a valid waiver of *trial counsel*," but "[t]he record does not show that [Daker] voluntarily waived the right to counsel on appeal as required." (Emphasis in original.) The habeas court also recognized that a valid functional waiver of the right to counsel can occur based on a defendant's manipulation of counsel, but again correctly found that, notwithstanding Daker's conduct regarding his attorneys before and during his trial, the record does not contain a clear waiver of appellate counsel.

Confusingly, by repeating verbatim in its order the summary rulings from the prior order that all of Daker's 438 grounds for habeas relief were "without merit," the habeas court appears to have reached the inconsistent conclusion that the seven grounds related to Daker's claim that he was denied his right to appellate counsel were meritless. The habeas court also inconsistently and improperly ended its discussion of that claim by saying that the case needed to be remanded "to the trial court to determine if [Daker] was entitled to appellate counsel." As the Warden correctly argues — and Daker

agrees — such a remand is inappropriate in any event because a habeas court is not authorized to remand a case to the trial court to make findings of fact or conclusions of law. See OCGA § 9-14-49 ("After reviewing the pleadings and evidence offered at the trial of the [habeas] case, the judge of the superior court hearing the case shall make written findings of fact and conclusions of law upon which the judgment is based."); *Newsome v. Black*, 258 Ga. 787, 788 (374 SE2d 733) (1989) ("[OCGA § 9-14-49] does not authorize the superior court in a habeas corpus proceeding to remand the proceeding to another superior court."). See also *Martin v. Astudillo*, 280 Ga. 295, 296 (627 SE2d 34) (2006) ("Because the habeas court had the responsibility of resolving the merits of a claim of a petitioner's constitutional challenge to the validity of his conviction or sentence, it was not authorized 'to remand the proceeding to another superior court.'" (citation omitted)). To confuse things further, in the final, "CONCLUSION" section of the order, after repeating that the case must be remanded to the trial court, the habeas court ordered that the habeas petition "be **DENIED**,"

45

apparently in its entirety.

Nevertheless, as Daker argues in his cross-appeal, there is no need for this Court to remand the case to the habeas court to clarify its conclusions because the habeas court specifically and correctly found and concluded that "the record does not contain a waiver *as to appellate counsel* explicitly." (Emphasis in original.) Notably, while asking this Court to remand the case to the habeas court, the Warden does not point to anything in the record that would support a finding that Daker validly waived his right to appellate counsel.[14]

Accordingly, we affirm the habeas court's order to the extent that it is consistent with the court's conclusion that Daker's right to appellate counsel was violated, and we reverse the order to the extent that it summarily and inconsistently concludes that Daker's

---

[14] We note that the Warden suggests that Daker's right-to-appellate-counsel claim could be procedurally barred in habeas corpus because he did not raise it in his first, uncounseled direct appeal. See OCGA § 9-14-48 (d). But the unconstitutional complete denial of counsel for direct appeal of a criminal conviction means that the original appellate proceeding was of no validity, and the issues raised or not raised in the prior pro se appeal do not procedurally bar the issues that may be raised in a proper new appeal. See *Trauth v. State*, 295 Ga. 874, 876-877 (763 SE2d 854) (2014). See also *Merriweather*, 285 Ga. at 766-767 (directing that habeas relief be granted because the defendant did not validly waive his right to appellate counsel).

right-to-counsel claim is meritless, that the case must be remanded to the trial court, and that all habeas relief should be denied. We remand the case to the habeas court to grant relief to Daker in the form of a second, out-of-time direct appeal and to set aside the trial court's order denying Daker's motion for new trial and this Court's decision affirming his convictions. See *Hall*, 310 Ga. at 724. When the case returns to the trial court, Daker's post-conviction process should start anew, and he may then file a timely new motion for new trial or a timely notice of appeal. See id. at 724-725. He should do so with appointed counsel if Daker has been determined by the CDO to be indigent at that time; with retained counsel if Daker has been determined by the CDO not to be indigent at that time; or pro se if Daker first knowingly, intelligently, and voluntarily elects to represent himself in post-conviction proceedings after being properly advised of the risks of doing so, or if the trial court first makes a proper finding that Daker has functionally waived his right to appellate counsel.

In closing, we recognize that Daker is an extraordinarily

47

litigious defendant whose shenanigans can be frustrating for courts to deal with. See *Daker v. Bryson*, Case No. S16D0733 (Feb. 4, 2016) (order explaining that because Daker had filed over 100 cases in this Court, virtually all lacking in merit and often showing a willingness to ignore or attempt to evade this Court's rules, he would henceforth be required to request leave to file any document here and to state that the document and arguments therein were prepared in good faith and not for vexatious purposes). Nevertheless, Daker's rights under the Constitution and laws must be upheld when properly asserted.

*Judgment affirmed in part and reversed in part, and cases remanded with direction. All the Justices concur.*

Decided May 17, 2021.

Habeas corpus. Tattnall Superior Court. Before Judge Russell.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellant.

*Zell & Zell, Rodney S. Zell*, for appellee.